UNITED STATES of America, Plaintiff-Appellee,

v.

Roswell William WIXOM, Defendant-Appellant.

No. 18645.

United States Court of Appeals,
Seventh Circuit.

April 12, 1971.

New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

John Donald O'Shea, Moline, Ill., for defendant-appellant.

Frank J. Violanti, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for plaintiff-appellee.

Before KILEY and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

KILEY, Circuit Judge.

Defendant Wixom was convicted by a jury under a four count indictment charging him and others with conspiracy to counterfeit, and with various substantive counterfeiting offenses. He has appealed. We affirm.

Wixom, White, Bishop and McGivern were named in the indictment. The evidence shows that White owned a house in East Peoria, Illinois, and permitted Wixom to set up in the basement a printing press and camera, which Wixom used to produce counterfeit currency.

On April 4, 1969, Wixom went to Moline, Illinois to arrange with Bishop for distribution of counterfeit money. On the same day, White, who had been arrested on March 29, 1969, led Secret Service agents and others to his East Peoria house and opened it. A warrantless search was then conducted on the premises, resulting in the seizure of a printing press, camera, notes, plates and negatives. The same night, Wixom was arrested in Moline by the agents, with a warrant. The indictment followed on

---

1. Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

June 25, 1969 and his trial began on January 30, 1970.

The district court dismissed Wixom's pre-trial motion to suppress the fruits of the warrantless search. At his trial the evidence seized was introduced over his objection.[2] Wixom contends the admission of this evidence was reversible error. He argues that he occupied White's house under an oral lease, that his occupancy was known by the agents and that he had not given his consent to the search.

■ We agree with Wixom that the district court erred in finding that an "emergency" faced the agents justifying the search without a warrant. Two agents, a deputy marshal, and at least one state policeman participated in the search and seizure. Wixom was in Moline at the time, apparently to the knowledge of the agents. The press and camera weighed about 500 pounds and were not readily movable. And the agents admitted that courts were available for obtaining a search warrant at the time the search was conducted. There was no reason given why an agent could not have obtained a warrant while others guarded the premises against taking and secreting or destruction of the material seized. Under these circumstances, there was no emergency such as to justify a warrantless search.

Nevertheless, we think that White consented to the search by taking the agents to the house which he owned and opening the door with his key; and that White's consent, under the circumstances of this case, was binding on Wixom. White and Wixom were confederates in the counter-

feiting scheme and in the attempts to sell the counterfeit bills. White owned the house where Wixom printed the bills, and frequently went there to observe and advise. Although there was evidence of an oral agreement whereby Wixom was to pay White rent for use of the house,[3] no rent was ever paid, even though almost three installments were due; and no mention was made by White to the officers who made the search that a landlord-tenant relationship existed. There is no evidence that the house was occupied for any purpose other than the counterfeiting operations.[4]

■ It seems clear from this evidence that no true landlord-tenant relationship existed after White moved Wixom into the house. Each had equal rights to the use and occupation of the premises at the time of the search, and either could give consent to the search, the fruit of which would be admissible against the other party. Cf. Pasterchik v. United States, 400 F.2d 696, 699 (9th Cir. 1968), cert. denied, 395 U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770 (1969); Weaver v. Lane, 382 F.2d 251 (7th Cir. 1967), cert. denied, 392 U.S. 930, 88 S.Ct. 2289, 20 L.Ed.2d 1390 (1968); United States v. Sferas, 210 F.2d 69 (7th Cir. 1954).

■ Wixom also contends that the court committed reversible error in refusing to dismiss the indictment and discharge him for want of a speedy trial.

Wixom was arrested on April 4, 1969. After an April 22, 1969 preliminary hearing, at which Wixom was bound over to the grand jury, he was removed, on May 6, 1969, to Omaha, Nebraska for a federal trial on another charge and was

---

2. The printing press and camera were viewed by the jury in their place of storage away from the courtroom.

3. There is no evidence as to the date on which this agreement was reached. Wixom began the printing operations in the house three weeks before White's arrest.

4. Agent Weed testified that before White led them to the printing press, the investigation indicated that Wixom was using the basement of the house where the

printing press was stored, but did not indicate whether Wixom was using any other part of the building. And the search revealed "no clothes or anything in the place to indicate anyone was living there." There is no direct evidence as to where Wixom lived during the period, other than the testimony of a Moline tavern owner that Wixom lived periodically in a small apartment adjoining the bar and that Wixom had slept there the night before he was arrested.

found guilty. On June 6, while Wixom was in Omaha, his counsel demanded a "speedy trial" of the case now before us. Wixom was indicted June 25, 1969. On November 12, 1969 he was returned to Illinois and—although continually in federal custody—capias was served on him on November 17, 1969. Wixom was tried January 30, 1970, two and one-half months after he was returned to Illinois. A hearing was had on his motion for discharge and the motion was denied.[5] He claims that the ruling was reversible error, relying upon the Sixth Amendment and Ill.Rev.Stat. ch. 38, § 103–5.[6]

The Sixth Amendment provides in general the right to a speedy trial. And Rule 48(b) of the Federal Rules of Criminal Procedure empowers a district court to dismiss a charge for unnecessary delay in indicting or trying a defendant. Wixom admits that he can cite no federal case which would entitle him to discharge merely because the delay between arrest and trial totaled ten months; and that there is no federal statute similar to the Illinois statute. But he claims that the Illinois statute should be applied to him since he was in custody in Illinois—*i. e.,* in the same jail with state prisoners— and that the failure to do so denies him equal protection and due process. He says that had he been an Illinois, instead of a federal, prisoner he would have been entitled to discharge under the Illinois statute. He argues that in People v.

Swartz, 21 Ill.2d 277, 171 N.E.2d 784 (1961), the Illinois Supreme Court discharged a state prisoner held in federal custody; that the spirit of the Sixth Amendment requires similar treatment by federal court; that the district court in Illinois should not have let the Omaha district court have him for trial; that his Sixth Amendment right is unaffected by the Omaha interruption of custody in the Illinois federal district under Waugaman v. United States, 331 F.2d 189 (5th Cir. 1964); and Fouts v. United States, 253 F.2d 215 (6th Cir. 1958); and that this court's statement in Phillips v. Nash, 311 F.2d 513 (7th Cir. 1962), that the Illinois policy is prompt trial of pending criminal charges, suggests that the Illinois policy should extend to federal prisoners in custody in Illinois.

There is no merit in any of Wixom's arguments. The Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure require a speedy trial, free from unnecessary delay. In United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), the Supreme Court held that defendants arrested in 1962 and reindicted after their Section 2255 motion were granted in 1964 were not denied a speedy trial. The Court noted that the new indictment was brought within the applicable statute of limitations, defendants' claim of prejudice in defending themselves was insubstantial and speculative, and there was no showing of oppressive or culpable gov-

---

5. The motion was renewed in arrest of judgment and again denied.

6. Section 103–5 provides, in relevant part:
   (a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody * * *.

   \* \* \* \* \*

   (e) If a person is simultaneously in custody upon more than one charge pending against him in the same county, * * * he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by subparagraphs (a) and (b) of this Section. Such person shall be tried upon all of the remaining charges thus pending within 120 days from the date on which judgment relative to the first charge thus prosecuted is rendered pursuant to Section 118–1 of this Act or, if such trial upon such first charge is terminated without judgment and there is no subsequent trial of, or adjudication of guilt after waiver of trial of, such first charge within a reasonable time, the person shall be tried upon all of the remaining charges thus pending within 120 days from the date on which such trial is terminated * * *.

ernmental conduct. The Court then stated, at 120, 86 S.Ct. at 776:

We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. * * * A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." Beavers v. Haubert, 198 U.S. 77, 87 [25 S.Ct. 573, 576, 49 L.Ed. 950]. "Whether delay in completing a prosecution * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive," Pollard v. United States, 352 U.S. 354, 361 [77 S.Ct. 481, 486, 1 L.Ed.2d 393].

In the case before us, we think the transfer of defendant to Omaha for prosecution of him on an earlier charge was proper and did not deny him a speedy trial where he was returned to Illinois and tried on the later charge within ten months after his arrest and two and one-half months after his return. There is no showing that the delay prejudiced defendant or was purposeful or oppressive. *See* United States v. Kaufman, 393 F.2d 172, 175 (7th Cir. 1968).

The cases cited by defendant are of no aid to him. In *Waugaman* there was a two and one-half year delay between indictment and trial. The court did not rule on the merits of petitioner's habeas corpus petition because of a pending Section 2255 motion and did not indicate whether relief ought to be granted. And in *Fouts* there was a ten year delay between indictment of defendant and his trial on a federal charge. During this ten year period, defendant was in prison on a state charge for which he was convicted prior to the federal indictment, and the federal government made no effort to bring defendant to trial on the federal charge. And this court's opinion in *Phillips*, a civil rights action brought by a state prisoner, carries no suggestion that federal prisoners are entitled to the Illinois remedy.

Defendant raises additional points with respect to alleged improprieties at the trial. We have considered these points in the context of the trial and see no merit to them.

The judgment is affirmed.