Jackie Vance **LOWERY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45613.

Court of Criminal Appeals of Texas.

Sept. 25, 1973.

Emmett Colvin, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Punishment was assessed by the jury at death.

Morris J. Patterson, an employee of a vending machine company, was shot and killed during an armed robbery in Dallas on the afternoon of October 26, 1970.

Floyd Johnson and Barney Slakey were counting coins in the vending company office when the robbery occurred. Both made positive in-court identifications of appellant as the one of two robbers who drew a long-barrelled revolver and ordered them to lie on the floor at the rear of the office. The other robber brandished a sawed-off shotgun.

While they were on the floor, another employee entered the front door. They heard one of the robbers speak, then a pistol shot, and the employee, Patterson, fell to the floor beside Slakey. Patterson was shot in the back, and the bullet, a .357 magnum, passed completely through his body. He died thirty minutes later. Neither of the two witnesses actually saw the shooting occur.

On October 28, 1970, the Dallas Police received a tip from an unidentified informer that appellant was involved in the robbery and murder. The witness Slakey was then asked to view a photographic display, at which he identified a picture of appellant as that of one of the robbers. Based

on the tip and the photographic identification, an affidavit was filed and a warrant issued for appellant's arrest.

Officers, acting pursuant to an arrest warrant, apprehended appellant in an apartment in Dallas on October 29, 1970.

■ Appellant challenges the legality of the arrest, contending that the affidavit upon which the arrest warrant was issued was based upon hearsay and did not comply with the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964).[1]

He urges that he was harmed by the illegal arrest through the admission of a .357 magnum pistol seized incident to his arrest. The pistol was discovered in plain view on the floor beside appellant when the officers entered the apartment living room. If the arrest was unlawful, then the pistol would not have been admissible.

The affidavit in issue first alleges that appellant committed the offenses of robbery and murder, the source of which allegation was "reliable information from an informant." Clearly, the allegation is hearsay. The Supreme Court has held that the same standards set forth in Aguilar exist for hearsay affidavits supporting arrest warrants as exist for those given in support of search warrants. Barnes v. Texas, 380 U.S. 253, 85 S.Ct. 942, 13 L.Ed.2d 818 (1965), reversing Barnes v. State, Tex.Cr. App., 390 S.W.2d 266.

The affidavit is in the record before us. Dusek v. State, Tex.Cr.App., 467 S.W.2d 270. The pertinent portion of the affidavit reads: "Affiant has reliable information from an informant that Jackie Vance Lowery did commit the offense of armed robbery and murder of Morris J. Patterson on the 26th day of October, 1970 at approximately 5:40 P.M. Mr. Barney Slakey has positively identified a picture of Jackie Vance Lowery at 9:05 P.M. on the 28th day of October, 1970 as the person who committed the offense of armed robbery and murder of Morris J. Patterson. The offense occurred at 1119 Wayne Street at the City Cigarette Service Office."

The affidavit contains neither underlying facts upon which the informer concluded the appellant was involved nor any circumstances from which the affiant concluded the informer was credible and his information reliable. Thus, with respect to the first sentence, neither of the two prongs of Aguilar has been satisfied. Spinelli v. United States, 393 U.S. 410, 89 S.

1. Although neither appellant nor the State have briefed this point, the record reflects a question was raised at trial as to whether the disputed affidavit was filed in the Justice Court to obtain an arrest warrant, or whether it was filed to support a murder case that was filed against appellant in that court on the same morning. This Court has held that affidavits filed for purposes of prosecution need not allege probable cause with that specificity necessary for issuance of an arrest warrant. Chapa v. State, Tex.Cr.App., 420 S.W.2d 943; Vallejo v. State, Tex.Cr.App., 408 S.W.2d 113. Affidavits filed for issuance of arrest warrants must provide the magistrate with "sufficient information to support an independent judgment that probable cause exists for the warrant." (Whiteley v. Warden, Wyoming Penitentiary, 401 U.S. 560, 564, 91 S.Ct. 1031, 1035, 28 L.Ed.2d 306, 311 (1971); see Cole v. State, Tex.Cr.App., 484 S.W.2d 779 at n. 2. The trial court held that the affidavit was not filed to support the warrant and that it was therefore sufficient.

An examination of the record, however, reveals that Officer Hallam stated twice during his testimony that he filed the affidavit for the specific purpose of obtaining an arrest warrant. After obtaining the warrant, officers proceeded to an apartment house where appellant was arrested. The trial court's conclusion that the warrant flowed from filing of a case is not supported by the evidence.

In McClung's Texas Criminal Practice (1971), p. 13, it is stated: "To justify issuance of a warrant upon a complaint or affidavit, the magistrate must require the constitutional safeguards of probable cause to be incorporated in the complaint or affidavit or, at least, if the accusatory pleading is not to contain such underlying facts, an additional affidavit should be signed and filed with the accusatory affidavit, the former stating the underlying facts and circumstances and forming the basis of the issuance of the arrest warrant."

Ct. 584, 21 L.Ed.2d 637 (1969); cf. Stoddard v. State, Tex.Cr.App., 475 S.W.2d 744; Powers v. State, Tex.Cr.App., 456 S.W.2d 97.

■ A hearsay affidavit, otherwise insufficient under Aguilar, may be buttressed with corroborating facts obtained in surveillance or information obtained from other sources, Spinelli v. United States, supra; Polanco v. State, Tex.Cr.App., 475 S.W.2d 763. The facts recited for corroboration purposes must, however, be based upon personal knowledge of or observations by the affiant. Ruiz v. State, Tex. Cr.App., 457 S.W.2d 894 (concurring opinion).

■ The corroborating facts recited in the affidavit before us are: "Barney Slakey has positively identified a picture of Jackie Vance Lowery as the person who committed the offense of armed robbery and murder of Morris J. Patterson." The affidavit does not provide the necessary information that the identification was made in the affiant's presence, if indeed it was, nor that Slakey was a person known to affiant as an eyewitness to the robbery-murder who could therefore identify the offender. Without qualifying the corroborating facts as the personal knowledge of the affiant, the additional facts are corroborative of nothing, see Spinelli v. United States, supra (concurring opinion of Mr. Justice White), and the affidavit is still deficient.

It is possible that the second sentence, which recites that Slakey identified appellant as the offender, could itself provide probable cause for a warrant to issue. We immediately note, however, that this statement, too, is hearsay.

So again we look for underlying facts upon which this named informer concluded appellant was the offender. We find there are none. From testimony of several State's witnesses, including the informer and the affiant, we know that Slakey was an eyewitness to the robbery and present when the fatal shooting occurred. This vital fact, known to the affiant, was not included in the affidavit.

The difficulty we have with this affidavit is the same as that of the Supreme Court in Aguilar.

"The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that the narcotics were in petitioner's possession." 378 U.S. 108 at 113–114, 84 S.Ct. 1509 at 1513.

■■ Although this part of the affidavit recites identification by a named individual, the same element of personal knowledge by him or qualification of his capacity to identify the offender is not present. While the evidence reflects these facts were known to the officers, the affidavit is devoid of such information. The inferences from the facts which lead to the complaint "(must) be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U. S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). The purpose of the complaint, then, is to enable the appropriate magistrate to determine whether the "probable cause" required to support a warrant exists. Giordenello v. United States, 357 U. S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503, 1509 (1958).

The magistrate could not have found probable cause in this case absent a showing that Barney Slakey was an eyewitness. The affidavit fails to reflect this vital fact.

We must conclude that the affidavit provided the magistrate with no basis for an independent determination of probable

cause, and the warrant that issued therefrom was illegal.

Having found the affidavit invalid and having concluded a lawful arrest could not have been made with the arrest warrant, we look for a basis upon which the arresting officers could have effected a warrantless arrest.[2]

Officer Hallam testified that he and Officer Potts were among approximately twenty officers who participated in appellant's arrest. Both Hallam and Potts knew of the informer's tip that appellant was the offender, the informer having conveyed the tip directly to Potts. Of course without more information, this tip alone did not constitute probable cause, Whiteley v. Warden supra; Cole v. State, supra; however, both also knew that Barney Slakey was an eyewitness to the robbery, present during the shooting, and that Slakey had identified appellant in a photographic display as the robber-murderer.

■ The total information available to them at the time of the arrest would clearly have warranted "a man of reasonable caution in the belief" that appellant had committed the offense. See Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Almendarez v. State, Tex.Cr.App., 460 S. W.2d 921. Within the limits of the Fourth Amendment, the law of the State determines the validity of a warrantless arrest, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and in determining if the officers in the instant case could effect a lawful arrest without warrant, we look to the statutes of this State.

■ Chapter Fourteen, Vernon's Ann. C.C.P., provides the authority for most lawful warrantless arrests in Texas.[3] An arrest may be made with probable cause when the authorities, be it peace officers or magistrates, have reasonable belief that an offense is being committed in their presence. Articles 14.01, 14.02, V.A.C.C. P.; Daniels v. State, Tex.Cr.App., 476 S. W.2d 12. The record in the instant case reveals no evidence that the arresting officers believed appellant was committing an offense in their presence when they converged upon the Sherwood Forest Apartments. The sole reason for the arrest was their probable cause to believe that appellant had already committed (and completed) an offense. When officers enter the premises to effect a warrantless arrest under Article 14.01, V.A.C.C.P., they must have adequate cause to suspect an offense *before* they enter, and justification cannot be developed afterwards. Delaporte v. State, Tex.Cr.App., 471 S.W.2d 856.

■■ When officers discover a person in a suspicious place and under circumstances which reasonably show an offense has been or is about to be committed, then they may make a lawful warrantless arrest under Article 14.03, V.A.C.C.P.; Brown v. State, Tex.Cr.App., 481 S.W.2d 106. Again, the facts of this case are indicative of nothing that would characterize the Sherwood Forest Apartments as a suspicious place. There is no evidence of how the officers knew appellant was at that location, nor is there evidence concerning the circumstances of his presence there. If the officers knew of unusual conditions under which appellant was in the apartment, they did not disclose these facts at trial and there is no way to conclude the officers arrested appellant in a suspicious

2. See Whiteley v. Warden, supra; United States v. Kennedy, 457 F.2d 63 (10th Cir. 1972); United States ex rel. Gockley v. Myers, 450 F.2d 232 (3rd Cir. 1971).

3. Other statutory authority for warrantless arrests such as for violation of the Texas

Motor Vehicle, Laws, Article 6701d, Sec. 153, Vernon's Ann.Civ.St., and to prevent the consequences of theft, Article 18.22, V.A. C.C.P., is clearly inapplicable here and will not be discussed.

place or under suspicious circumstances apart from their well founded belief that he had committed a serious crime.

Article 14.04, V.A.C.C.P., affords the remaining possible basis for a warrantless arrest; this Article would apply when officers received information from a credible person that a felony has been committed and that the offender is about to escape so that there is no time to procure a warrant. This Court has upheld warrantless arrests under Article 14.04, V.A.C.C.P., when officers had probable cause for an arrest and a belief that the offender was about to escape. Thornton v. State, Tex.Cr.App., 451 S.W.2d 898. This Court has also held that Article 14.04, V.A.C.C.P., does not apply if officers, having probable cause, do not believe at the time of the arrest that the offender is about to escape. Vinson v. State, 138 Tex.Cr.R. 557, 137 S.W.2d 1048; Rippy v. State, 122 Tex.Cr.R. 101, 53 S.W.2d 619.

In the instant case, there is no evidence that the officers believed the appellant was about to escape. Indeed, their commendable efforts in obtaining a warrant make evident that they had no such belief and could not have justified a warrantless arrest under Article 14.04, V.A.C.C.P.

Our analysis of the facts leads us to conclude that a lawful warrantless arrest could not have been made.

■ Appellant's arrest was illegal, and the admission of the pistol seized incident to that arrest was therefore improper. We cannot say that the error in admitting the alleged murder weapon was harmless beyond a reasonable doubt, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Appellant has also challenged the admissibility of other evidence seized urging that the search of the apartment immediately after his arrest exceeded the scope of a lawful search incident to an arrest as de-

fined in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A sawed-off shotgun similar to one wielded by one of the robbers and five bags of coins similar to those taken in the robbery, were discovered inside an overnight bag and a musical instrument case in an upstairs bedroom. (Appellant was arrested on the first floor of the apartment).

The State urges that the warrantless search of the entire apartment was proper because the officers obtained a freely given consent for the search from a woman, Joyce Strawn, who was present in the apartment at the time of the arrest. Appellant contends that Joyce Strawn could not have authorized the search because she did not have the capacity to consent to a search.

■ Third persons can consent to searches when they exercise control over and have authority to use the premises being searched. The Supreme Court discussed the issue of capacity briefly in Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

In Frazier, petitioner shared the use of a duffel bag with his cousin. When the cousin, Rawls, consented to police search and seizure of the cousin's clothes in the bag, the consent was effective also to authorize seizure of petitioner's clothes therein.

"Since Rawls was a joint user of the bag, he clearly had authority to consent to its search . . . . Petitioner, in allowing Rawls to use the bag and in leaving it in (Rawls') house, must be taken to have assumed the risk that Rawls would allow someone else to look inside." 394 U.S. 731 at 740, 89 S.Ct. 1420 at 1425.

This Court, in Sorensen v. State, Tex.Cr. App., 478 S.W.2d 532, recognized that the Fourth Amendment's protection "depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expecta-

tion of freedom from governmental intrusion." 478 S.W.2d at 533, quoting from Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). That one person's consent may authorize seizure of evidence against another person is concomitant to the reduction in privacy one expects when (use of) an area is shared with another. See Frazier v. Cupp, supra.

■ It is a question of fact whether the consenting party has the right to use and occupy a particular area to justify his permitting officers to search that area. Joyce Strawn would have had the capacity to consent to the instant search only if she had the right to use and occupy the apartment.

■ The question of Strawn's capacity to consent was first raised during a hearing out of the presence of the jury following appellant's objection at trial to introduction of the fruits of the search. The only evidence bearing upon her use and occupation of the apartment was the testimony of one of the officers who conducted the search, Officer Rose, that he concluded she was living there because he observed some of "her" clothing and other unidentified items in the apartment, presumably in the downstairs area. None of these items or clothes were described or introduced into evidence. No witness related having asked her identity, whether she lived in the apartment, how long she had been there, or what her relationship was to the appellant. There is likewise no evidence of any statement by her about her relationship to the appellant or the apartment. The problem of identifying Strawn's capacity was complicated by the fact that she did not testify at this stage of the trial. Neither did appellant testify, and the only evidence perti-

nent to this issue came in testimony of the officers.[4] This evidence may be summarized by stating three facts:

(1) Joyce Strawn was in the apartment.

(2) Women's clothing and "other items" were in the apartment.

(3) Strawn told the officers they could search the apartment.

In Sorensen v. State, supra, capacity to consent was an issue, and the evidence clearly supported the legality of the search. The defendant's mother testified that she consented to the search of her home in which her twenty year old son also resided. From her testimony about her activities in the home and her access to all parts thereof, it was clear she had rights to use and occupy the entire home and therefore the capacity to permit a search to include the room used by her son.

In Powers v. State, Tex.Cr.App., 459 S. W.2d 847, this Court held the evidence sufficient to establish the capacity of a woman to consent to the search of an apartment. The evidence came in testimony of one of the officers who conducted the search who testified that it was the woman's apartment, that her clothes were there, and that she changed clothes in the apartment.

The instant case is in contrast to these and numerous cases in other jurisdictions in which the evidence contained sufficient facts to prove the consenting party had the right to use and occupy the premises and thus capacity to consent to a search thereof.[5]

There remains another question concerning the search, for even if Strawn had the authority to consent, the search that result-

---

4. Joyce Strawn did testify later in the trial as a witness for the defense. At that time, she denied living in the apartment, denied having clothing in the apartment, and denied having consented to the police search.

5. United States v. Wilson, 447 F.2d 1 (9th Cir. 1971) ; White v. United States, 444

F.2d 724 (10th Cir. 1971) ; United States v. Wixom, 441 F.2d 623 (7th Cir. 1971) ; United States v. Thompson, 421 F.2d 373 (5th Cir. 1970) ; Spencer v. People, 163 Colo. 182, 429 P.2d 266 ; People v. Smith, 108 Ill.App.2d 172, 246 N.E.2d 689 ; see 31 A.L.R.2d 1078.

ed therefrom would be legal only if the consent was voluntary.

Appellant urges that the State has not met its burden in showing that consent was voluntarily given.

The United States Supreme Court, in the recent case of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973),[6] said "that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied."

The circumstances of appellant's arrest and the ensuing search of the apartment were described by several officers who testified that about twenty officers went to the apartment to effect appellant's arrest. Two officers, one with pistol drawn, the other with a shotgun, knocked on the door. They identified themselves as police, announced they had an arrest warrant for appellant, and they were immediately admitted into the apartment by Joyce Strawn, who was then 17 years old. The officers at once spotted appellant sitting on the floor in the living room. They moved to him, placed him in handcuffs, and took into their possession the .357 magnum revolver that was on the floor beside appellant.

Officer Rose testified that Joyce Strawn consented to a search of the apartment.

Rose gave no testimony about how consent was obtained, how it was requested, or what, if any, conversation took place between the officers and Strawn.

Detective Hallam testified that he entered the apartment carrying a shotgun just as appellant was being handcuffed. There were at least four other officers inside before him. He said he heard the girl tell Officer Rose, "She had no objection to him going through the apartment." He gave no testimony concerning how the consent was obtained nor what conversation preceded it.

Deputy Wiseman testified that he and two other officers entered through the backdoor and immediately went upstairs in the apartment because they thought they heard persons in the apartment other than the appellant and Strawn. They found no one and then commenced a search of the apartment. In one of three upstairs bedrooms, they found the sawed-off shotgun in a musical instrument case under a bed, and in the closet they found an overnight bag that contained the bags of coins.[7]

The scene described by State's witnesses is that at least five and possibly more officers were in the room with pistols and shotguns in their hands. Appellant was under arrest and handcuffed, and the 17 year old girl then told Officer Rose "that she had no objection to him going through the apartment."

The Supreme Court, in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20

---

6. In Schneckloth v. Bustamonte, supra, as in the instant case, the party alleged to have given the consent was not advised that he had a right to refuse to consent. The United States Supreme Court said, "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. See Cole v. State, Tex.Cr.App., 484 S.W.2d 779; DeVoyle v. State, Tex.Cr.App., 471 S.W.2d 77.

7. The situation described by Deputy Wiseman is distinguishable from the search and seizure

discussed in Simpson v. State, Tex.Cr.App., 486 S.W.2d 807. In Simpson, heroin was found on the second floor of the apartment after the defendant's arrest downstairs. Officers went upstairs in pursuit of a man who had fled when they entered the apartment. This Court held that seizure of the heroin, which was in plain view, was lawful and that the officers acted properly in following the man upstairs as a protective measure to ensure their safety.

In the instant case, even if the officers properly went upstairs as a protective measure, their exploration into an overnight bag and a musical instrument case was unnecessary for that purpose, and the search and seizure cannot be justified under Simpson.

L.Ed.2d 797 (1968), cautioned that submission to authority would not suffice. Here, as in Bumper, the officers were armed and looking for someone other than the person who consented to their entry. This Court and others have been critical of consent given in the face of numbers of armed officers. The display of weapons is a coercive factor that sharply reduces the likelihood of freely given consent. See Weed v. United States, 340 F.2d 827 (10th Cir. 1965); Paprskar v. State, 484 S.W.2d 731.

The totality of circumstances in the instant case leads us to conclude that the court and jury's [8] finding that consent was freely and voluntarily given by one in a position to give it is not supported by the evidence.

For the errors discussed, the judgment is reversed and the cause is remanded.

Opinion approved by the Court.

---

8. The court instructed the jury relative to waiver of search warrant by a person in control of the premises consenting to the search.