Morris **HERNANDEZ**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 62309.

Court of Criminal Appeals of Texas, Panel No. 3.

Jan. 16, 1980.

Rehearing Denied July 16, 1980.

Armando Barrera, Alice, for appellant.

Patricia A. Elliott, Dist. Atty. and Jorge A. Solis, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for possession of heroin. Punishment was assessed at imprisonment for six years.

In his sole ground of error, appellant complains of the trial court's denial of his motion to suppress. He contends that the evidence seized was the fruit of an unlawful stop. We agree with appellant's contention and reverse.

A police officer stopped the car that appellant was driving. This stop was pursuant to a capias for appellant's arrest. After the stop, the officer searched the car and seized certain evidence. This evidence became the subject of appellant's motion to suppress.

The capias for appellant's arrest resulted from a surety withdrawal on a bond. This capias was issued by a deputy clerk of the County Court at Law, Taylor County. Appellant contends that in seeking to withdraw from the bond, the surety failed to comply with the requirements of Article 17.19, V.A.C.C.P. Appellant further contends that this failure rendered the capias invalid, which made the stop pursuant to the capias unlawful.

Article 17.19 provides as follows:

Any surety, desiring to surrender his principal, may upon making affidavit of such intention before the court or magistrate before which the prosecution is pending, obtain from such court or magistrate a warrant of arrest for such principal, which shall be executed as in other cases.

In the present case, contrary to the statutory requirement, the surety obtained a capias rather than an arrest warrant. In addition, the capias was obtained from a deputy clerk rather than the court or magistrate before which the prosecution was pending.

Appellant contends that the statute should be strictly construed. He relies on two cases discussing Article 17.19 and its immediate predecessor. These cases require that the statute be strictly followed. *Austin v. State*, 541 S.W.2d 162 (Tex.Cr. App.1976); *Pfeil v. State*, 118 Tex.Cr.R. 124, 40 S.W.2d 120, 123 (1931). In support of his position appellant argues that Article 17.19 reflects the Legislature's determination that the decision to restrict a citizen's liberty should be made by a neutral and detached magistrate.

The State urges that Article 17.19 should be liberally construed, and thus the surety's failure to comply strictly with Article 17.19 did not invalidate the capias. The State relies on two cases discussing predecessors to Article 17.9. These cases hold that the predecessor statutes should be liberally interpreted. *Wells v. State*, 100 Tex.Cr.R. 73, 271 S.W. 918 (1925); *Whitner v. State*, 38 Tex.Cr.R. 146, 41 S.W. 595 (1897). The State also urges that this Court's opinion in *McConathy v. State*, 545 S.W.2d 166 (Tex. Cr.App.1977), relegates the decision to issue the arrest warrant to a ministerial act, which a court clerk could perform by issuing a capias. In *McConathy* we found that the trial court had no authority to refuse issuance of the arrest warrant after the affidavit required by Article 17.19 had been filed.

*Whitner,* supra, parallels the present case insofar as the surety obtained a capias from the court clerk rather than an arrest warrant from the judge or magistrate. The crucial distinction in *Whitner,* however, is that when the surety obtained a capias from the clerk, the court was not in session. In upholding the procedure followed, *Whitner* emphasized that requiring strict compliance with the statute when the court was not in session would leave the surety without a remedy. The circumstances that led *Whitner* to engraft an exception on the prior statute are not present in the instant case.

■ Whatever the merit of the State's policy argument, based on *McConathy,* supra, we think it properly should be addressed to the Legislature. Whatever the wisdom of this Court's holding in *Whitner,* supra, 82 years ago, we decline to encroach further on the Legislature's domain. We agree with *Pfeil,* supra, that this Court is "without right or power to do otherwise than follow the plain mandate of the statute." By obtaining a capias from the court clerk rather than an arrest warrant from the judge or magistrate, the surety violated the plain mandate of Article 17.19. We conclude that the surety's failure to comply with the requirements of Article 17.19 rendered the capias invalid, which made the stop pursuant to the capias unlawful. *Austin,* supra; see *Ex parte Grisaffi,* 140 Tex. Cr.R. 253, 144 S.W. 547 (1940); *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

■ Since the stop was unlawful and the evidence seized was a fruit of that illegality, appellant's motion to suppress should

have been granted.[1] *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *McDougald v. State,* 547 S.W.2d 40 (Tex.Cr.App.1977); *Lowery v. State,* 499 S.W.2d 160 (Tex.Cr.App.1973).

The judgment is reversed and the cause remanded.

DALLY, Judge, dissenting.

I agree with the majority interpretation of Art. 17.19, V.A.C.C.P., which requires that a warrant be issued by a judge or a magistrate. However, because I believe this interpretation represents a departure from the prior law upon which the arresting officer was entitled to rely, the fruits of the search made incident to that arrest should not be suppressed.

Analysis of this question must begin with an examination of the law which prevailed at the time of this arrest. At common law, the right of a surety to arrest and surrender the principal was viewed as practically absolute, with virtually no procedural limitations. See, e. g., *Taylor v. Taintor,* 83 U.S. (16 Wall.), 366, 371, 21 L.Ed. 287 (1873). Like the present law, past Texas statutes have allowed the surety to make his affidavit and secure an arrest warrant from a judge or a magistrate. Only one case has ever directly interpreted the force of this particular requirement. In *Whitner v. State,* 38 Tex.Cr.R. 146, 41 S.W. 595 (1897), the surety obtained a capias from the court clerk rather than a warrant from a magistrate. The Court held that the capias was nonetheless valid. Presiding Judge Hurt wrote that:

"If we adhere closely to the letter of the statutes as here expressed, we might

1. The dissenting opinion argues that the evidence seized as a result of the unlawful stop nonetheless should have been admissible under the reasoning of *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Notwithstanding this argument, two independent grounds preclude the admission of this evidence. First, there is no basis for a claim of good faith reliance on established law, and thus the reasoning of *DeFillippo* is inapplicable. The holding of *Whitner,* supra, was that a surety could obtain a capias from the court clerk only when the court was not in session. In the present case there was no showing that the court was out of session or even that the judge was unavailable. Contrary to intimations in the dissenting opinion, *McConathy,* supra, in no way expands the holding of *Whitner.* The surety's actions were clearly outside the narrow statutory exception created by *Whitner* and were in direct violation of the terms of Article 17.19. Second, the evidence in this case was obtained in violation of a state statute and was inadmissible as a matter of state law under Article 38.23, V.A.C.C.P.

adopt the construction claimed by appellants, but we believe a more liberal construction should be adopted. The statutes in question are intended to facilitate the surrender of a principal by his bail, whenever they shall desire from any cause to surrender to him; and to only allow this in a felony case after indictment, when the court should be actually sitting, would afford but very little relief to the surety."

41 S.W. at 597.

I do not take issue with the limiting construction of this case by the majority. But the *Whitner* opinion itself allows the legitimate inference that, despite statutory language to the contrary, a court clerk may issue a capias if the judge is not available. Consequently, there has been no cause to suspect the lawfulness of such a procedure until now. The quoted language from *Whitner* has been approvingly used in construing other portions of the statute. See *Wells v. State*, 100 Tex.Cr.R. 73, 271 S.W. 918 (1925). The broadest possible implication of *Whitner* was that a judge might be wholly unnecessary to the procedure of securing a warrant for surety surrender of a principal; and this implication was supported by *McConathy v. State*, 545 S.W.2d 166 (Tex.Cr.App.1977), holding that a judge has no authority to refuse the issuance of a warrant under Art. 17.19 after the requisite affidavit has been made, making issuance of the warrant essentially a ministerial act rather than a judicial function.

*Whitner*, together with *McConathy*, provided authority for the view that, despite the language of the statute, participation of the judge in the Article 17.19 warrant procedure was not mandatory. The arresting officer in this case would have been legally justified under pre-existing precedents in believing that the arrest warrant was legally valid. Under these circumstances, no useful purpose is served in penalizing the police conduct through reversal of this conviction.

In *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the Supreme Court held that an arrest made in good faith reliance on a "stop and identify" ordinance, which at the time had not been declared unconstitutional, was valid regardless of a judicial determination of its unconstitutionality. In that case, the Court reasoned that the officer did have probable cause to believe the ordinance was violated and the officer was not required to anticipate that a court would later hold the ordinance unconstitutional.

This case is not analogous to a case where the arrest warrant is issued without probable cause since, in that case, the warrant is illegal from its inception. At the time the capias here was issued it was presumptively valid until this Court modified its view of the applicable law. The officer was not required to anticipate this change. Although the ordinance involved in *DeFillippo* was clearly unconstitutional, see id. (Brennan, J., dissenting), the Court did not require the police officer to predict that conclusion. In this case, given *Whitner* and *McConathy*, the present holding of this Court was not clearly preordained and was much less predictable than the fate of the ordinance in *DeFillippo*. Where this Court has given authority for one good faith interpretation of the statute, in a context unrelated to the accuracy or fairness of the trial, we should not punish the police and the public when we adopt a different position. I dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

In its initial brief on original submission the State, speaking through her Criminal District Attorney of Taylor County, conceded:

". . . Since the only reason the officers stopped Appellant's automobile was their *possession of the capias for his arrest*, if the stop and detention is [sic] illegal, then any fruits found as a result of the illegal stop would likewise be inadmissible. *Wong Sun v. U. S.*, 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441] (1963);

*State v. Lowery* [*Lowery v. State*], 499 S.W.2d 160 (Tex.Crim.App.1973)."[1]

It was this issue of state law that was addressed by the panel on original submission, and both the majority and the dissenting opinions agreed that the arrest of appellant was unlawful because a capias rather than a warrant was issued by a clerk rather than rendered by the court, in twofold violation of Article 17.19, V.A.C.C.P.[2]

Now in its motion for rehearing the State, this time speaking through our State Prosecuting Attorney, builds on the foundation laid by the dissenting opinion on original submission and, with emphasis supplied by him, asserts:

". . . *The question is whether the illegality of the capias was so firmly established in the law that a reasonably prudent officer would have recognized it and would have been correspondingly deterred from making the arrest and search.*"

Thus, after almost one hundred and twenty five years experience under the plain statutory provision,[3] it is seriously suggested that its mandate may be avoided on the notion that a peace officer, trained and expected to follow the law, may be excused from doing so by attributing to him knowledge and understanding of two prior decisions of the Court which are said by only some of its members to hold that the statutory provision does not mean what its simple language states. The theory must be rejected here for as we comprehend the two opinions upon which it is asserted he was "entitled to rely," had the arresting officer known of them and relied on them, he would not have made the arrest on the flawed capias.

First, *Whitner v. State*, 38 Tex.Cr.R. 146, 41 S.W. 595 (1897). The *sine qua non* of the issue in that case is that the capias was obtained from the clerk of the court out of term.[4] That is simply not the case before us: The instant capias was issued November 16, 1978 [5]—*during* a statutorily specified term of the County Court at Law of Taylor County.[6] Thus, the facts, the issue and the holding of *Whitner v. State* are entirely different; yet, as an exception, it also teaches the general rule of regularity.

1. One officer at the Abilene Police Department actually made the stop at the instance of another. The officer testified that the requesting officer arrived as appellant was being removed from his car and stated the basis for the request: "We had a *county warrant* on the Defendant." All agree that purported authority for the arrest and concomitant search is really a capias issued by a deputy clerk of Taylor County Court at Law; it is addressed "To any *Sheriff* of the State of Texas . . ." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

2. In pertinent part, Article 17.19 reads as follows:

   "Any surety, desiring to surrender his principal, may upon making an affidavit of such intention *before the court* . . . before which the prosecution is pending, *obtain from such court* . . . a *warrant of arrest* for such principal . . . ."

3. Predecessors to Article 17.19, supra, have been in the code of criminal procedure in substantially the same language since the Old Code of 1856.

4. The opinion recites at 41 S.W. 596 that the surety "went before M. H. Royston, the clerk of said court (*there not being then a term of said*

*court*), and made an affidavit of his desire and purpose to make surrender of . . . his principal . . . ."

The contentions of appellants, summarized by the Court at 41 S.W. 597, were "that in article 321 the required affidavit is to be made before a court or magistrate, and that *as the affidavit was made out of term time* before the clerk, and without even any order before the clerk, it was absolutely void, and did not authorize the clerk to issue the writ for the arrest . . . ."

Looking to companion provisions for surrender "at any other time than during a term of the court," the majority of the Court believed they "serve to favor the construction that the affidavit can be made when the court is not in session," obviously meaning out of term time, *id.*

5. A date the calendar shows was a Thursday.

6. So far as applicable here Article 1970–343, creating the court, provides in Section 4 that its terms shall begin on the third Monday of, *inter alia*, October and December of each year and "shall continue *in session* until and including the Saturday next preceding the beginning" of the next term.

Invoking the second case, *McConathy v. State*, 545 S.W.2d 166 (Tex.Cr.App. 1977), is even more egregious. The essential conclusion there stated is "that all statutes dealing with the surrender of the principal must be read in light of Article 2372p–3, § 13(a)," V.A.C.S. That conclusion is fitting for Dallas County, from which the appeal in the case came, as well as other counties to which the act providing for licensing and regulating bail bondsmen is applicable—but in November 1978 Taylor County was not one of them.[7] Thus, the statute underlying the conclusion in *McConathy*, supra, may not be imported into Taylor County proceedings. Of all people, an Abilene peace officer should *know* that.

The dissenting opinion on rehearing alludes to language in *Whitner v. State*, supra, that "a more liberal construction of the statutes should be adopted," and surely that is what the *Whitner* court did in holding the affidavit may be filed and presented out of term.[8] But the Court had stated before[9] and reiterated after[10] *Whitner* that "[a] strict compliance with one or the other modes above indicated is necessary to a valid surrender." Indeed in *Pfeil v. State*, 118 Tex.Cr.R. 124, 40 S.W.2d 120 (1931), the Court canvassed all extant prior opinions, including *Whitner v. State*, supra, and concluded, *id.*, at 122:

"It is true that in one or two of the cases cited it has been *said* that the statute is to be liberally construed, but none of said cases cited overrule the holdings of the court in the cases of *Roberts et al. v. State*, and *Woodring & Howard v. State*, supra, and we have found no authority contrary to the doctrine stated in said cases. We believe the same is the law . . . ."

Likewise, today we adhere to the early enunciated "strict compliance" doctrine that with only slight aberration has been constantly applied by the Court to the mandate of Article 17.19, supra.[11] As issued, the purported capias did not authorize the arrest in question.

The notion suggested by our State Prosecuting Attorney is bottomed on the exclusionary rule fashioned by federal constitutional law, some of which is alluded to in the dissenting opinion. But the contested arrest is neither assailed as nor found by us to be violative of the Constitution of the United States; hence the federal exclusionary rule is not involved, and the federal decisions dealing with it are of no moment.

---

7. By Acts 1975, 64th Leg., p. 1194, ch. 451, the bottom side of the population bracket "according to the last preceding federal census" was lowered from 150,000 to 124,000 effective June 19, 1975; it is now 110,000, Article 2372p–3, supra, §§ 3(c), 5(a), and 12(b). We are informed by the brief of the Criminal District Attorney in this cause that which we judicially know: "The federal census of 1970 showed Taylor County to have a population of less than 124,000 . . . ." The State, accordingly, concedes that the act "does not apply to Taylor County."

8. The dissenting opinion also cites *Wells v. State*, 100 Tex.Cr.R. 73, 271 S.W. 918 (1925) for the same proposition, and clearly in dicta the Court did "observe" the attitude as stated in *Whitner.* However, the irony of *Wells* is the deed rather than the word, for the Court rejected the liberal construction urged by the appealing bondsmen and affirmed the judgment of forfeiture.

9. *Roberts v. State*, 4 Tex.App. 129 (1878).

10. *Woodring & Howard v. State*, 53 Tex.Cr.R. 17, 108 S.W. 371 (Tex.Cr.App.1908).

11. What we determine in this cause in no way implicates Article 2372p–3, V.A.C.S. for, as already demonstrated *ante*, its provisions were not in effect in Taylor County when the instant arrest and search were made. Nor, for the same reason, does our conclusion here demean principles of *McConathy v. State*, supra; but it is observed that, even though the judge to whom the "surrender" affidavit is presented be without discretion in responding to it, still the statute contemplates that the judge will see to it that a proper *warrant*, directed to appropriately designated peace officers, is issued and, if so advised, indicate any modification in the amount or nature of bail required upon execution of the warrant, and generally oversee the whole procedure to the end that the salutary purposes of Article 17.19, supra, are effectuated. The functions thus contemplated are too judicial in character to be relegated to clerical performance. See Articles 15.01 and 15.02 describing a warrant of arrest and its requisites.

What we have is an arrest violative of a state statute and consequential seizure of materials pursuant to the invalid arrest. Under state law the putative evidence thus seized was not admissible; it should have been, and must now be, suppressed.

This suppression is required by Article 38.23, V.A.C.C.P. which provides in pertinent part:

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

The terms of Article 38.23 are mandatory. *Jordan v. State*, 562 S.W.2d 472 (Tex.Cr. App.1978); *Ex parte Sims*, 565 S.W.2d 45, 49 (Tex.Cr.App.1977) (Douglas, J., dissenting). Because appellant's arrest plainly violated Article 17.19, the clear mandate of Article 38.23 requires suppressing evidence seized pursuant to this arrest.

As cases collected in the margin show,[12] evidence obtained in violation of state statutes must be suppressed under Article 38.23, even though this evidence was not acquired in violation of the federal constitution. The laws of the State of Texas require us to hold that the trial court erred in overruling appellant's motion to suppress.[13] This Court is "without right or power to do otherwise than follow the plain mandate of the statute." *Pfeil*, supra.

The State's motion for rehearing must be, and is, overruled.

DOUGLAS, Judge, dissenting.

Hernandez challenged the admission into evidence of the heroin because of the lack of an arrest warrant. On original submis-

---

12. In *Cruz v. State*, 586 S.W.2d 861 (Tex.Cr. App.1979), the trial court admitted evidence obtained in violation of Article 38.10, V.A.C. C.P. This Court reversed, holding the evidence inadmissible under Article 38.23.

In *Irvin v. State*, 563 S.W.2d 920 (Tex.Cr. App.1978), the trial court admitted evidence obtained pursuant to an arrest that violated Chapter 14, V.A.C.C.P. This Court reversed, holding the evidence inadmissible under Article 38.23.

In *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr. App.1976), the trial court admitted evidence obtained in violation of Chapter 14, V.A.C.C.P. This Court reversed, holding the evidence inadmissible under Article 38.23.

13. The dissent relies on *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), to support its conclusion that the exclusionary rule should not apply. As noted previously, the federal exclusionary rule has no application to a case where evidence was obtained in violation of a state statute; Article 38.23 controls. However, if federal law were to apply, *United States v. Caceres* provides no support for the dissenting position.

The Court in *Caceres* was careful to point out that it was not dealing with a case where a statute had been violated:

A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law . . .

In this case, however, unlike *Bridges v. Wixon* [326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103], the agency was not required by the Constitution or by statute to adopt any particular procedures or rules before engaging in consensual monitoring and recording . .

\* \* \* \* \* \*

Since no statute was violated by the recording of respondent's conversations, this Court's decision in *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, is likewise inapplicable.

99 S.Ct. 1465, 1470, 1473 n. 21 (1979). In *Caceres* the evidence at issue was obtained in violation of self-imposed agency procedure, not, as in the present case, a statute. The Court in *Caceres* clearly indicated that if a statute had been violated, the evidence would have been inadmissible.

On original submission, the dissent relied on *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), to support its conclusion that the federal exclusionary rule should not apply. On State's motion for rehearing, the dissent does not even cite *DeFillippo*; patently the rationale of *DeFillippo* is wholly inapposite.

*DeFillippo* involved good faith reliance on an ordinance that was later declared unconstitutional. The present case involves the violation of a statute whose constitutionality has never been questioned. Moreover, the circumstances of the present case provide no support for a claim of good faith. As noted in the majority opinion on original submission, the related actions directly violated the express language of Article 17.19. These actions clearly fell outside the narrow exception permitted by *Whitner v. State*, supra.

sion, the majority opinion reversed because the arresting officer's authority was based on a capias rather than an arrest warrant as required by Article 17.19, V.A.C.C.P.

In December, 1978, appellant·was stopped by an Abilene police officer who believed that Hernandez was the subject of an outstanding misdemeanor arrest warrant. Eleven balloons of heroin were found in Hernandez' car as the result of a search incident to the arrest. Hernandez had been on bail awaiting disposition of a misdemeanor marihuana possession charge. The surety on the bail bond, on November 16, 1978, withdrew from the bond by means of an affidavit filed with the Taylor County Clerk. A capias ordering appellant's arrest was issued the same day.

On original submission, the panel opinion held that the requirements of Article 17.19, V.A.C.C.P., were mandatory. We disagree.

Article 17.19, supra, reads as follows:

"Any surety, desiring to surrender his principal, may upon making affidavit of such intention before the court or magistrate before which the prosecution is pending, obtain from such court or magistrate a warrant of arrest for such principal, which shall be executed as in other cases."

This Court has held that Article 17.19, supra, is not to be construed literally but should be interpreted in such a manner as "to facilitate the surrender of a principal by his bail, whenever they shall desire from any cause to surrender him." *Whitner v. State*, 38 Tex.Cr.R. 146, 41 S.W. 595 (1897); *Wells v. State*, 100 Tex.Cr.R. 73, 271 S.W. 918 (1925).

In *McConathy v. State*, 545 S.W.2d 166 (Tex.Cr.App.1977), we reaffirmed the liberal interpretation to be given to Article 17.-19. There, we held that a trial judge must issue an arrest warrant when a surety presents an affidavit requesting withdrawal from the bond. The trial judge has no discretion in issuing the warrant; his only alternative, if he finds the affidavit to be without reasonable cause, is to require the surety to return all bonding fees.

The end result, with a bond withdrawal, is that there is virtually no distinction between a capias and an arrest warrant. Though each is issued by following a different procedure, see and compare, Article 17.-19, supra; Article 23.03, V.A.C.C.P., the issuance of either involves no exercise of discretion on the part of the issuing authority. There is no doubt that had the surety in the present case presented his withdrawal affidavit to a judge, an arrest warrant would have been issued.

The issue then becomes the effect of this error upon the admission into evidence of the heroin. Ever since the decision of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which applied the exclusionary rule to the states through the Fourteenth Amendment, the Supreme Court has consistently grappled with the scope of that rule. In *Mapp*, the Court stated that the rule's purpose was of constitutional origin and existed in order to protect rights guaranteed by the Fourth and Fifth Amendments to the United States Constitution, "to deter—to compel respect for the constitutional guaranty in the only effective available way—by removing the incentive to disregard it." 367 U.S. at 656, 81 S.Ct. at 1692.

In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court made it clear that *Mapp* "implied no total obliteration of state laws relating to arrests and searches in favor of federal law." Further, *Mapp* was not a formula for determining the reasonableness of a search; the exclusionary rule was to be applied in those cases where the constitutional violation was unreasonable. Reasonableness is to be determined in light of the " 'fundamental criteria' laid down by the Fourth Amendment . . . ." 374 U.S. at 33, 83 S.Ct. at 1630. *Ker*'s conviction was upheld.

In *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975) the Court declined to retroactively apply the holding of *Almeida-Sanchez v. United States*, 413 U.S. 266, 307, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). In doing so, the Court considered the purposes of the exclusionary

rule as the rule affected the retroactivity concept. The Court held that, where a police officer is acting in good faith that his conduct is in accordance with the law, the twin purposes of the exclusionary rule—the imperative of judicial integrity and the deterrent effect on unconstitutional police conduct—would not be served. " 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.' " 422 U.S. at 539, 95 S.Ct. at 2318, quoting *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court described the exclusionary rule as " 'simply a prophylactic device intended generally to deter Fourth Amendment violations by law enforcement officers.' " 428 U.S. at 479, 96 S.Ct. at 3045, quoting *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). The rule's essential purpose is to safeguard Fourth Amendment rights and its application must be limited to those areas " 'where its remedial objectives are thought most efficaciously served.' " 428 U.S. at 487, 96 S.Ct. at 3049, quoting *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

In *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the Court refused to apply the exclusionary rule where a wiretap recording violated only an Internal Revenue Service regulation because the violation was neither deliberate nor prejudicial and did not affect any of the defendant's constitutional or statutory rights. The Court found that the wiretap "reflected a reasonable, good-faith attempt to comply in a situation in which no one questions that monitoring was appropriate and certainly would have received Justice Department Authorization . . . .", had the IRS complied with the necessary procedures.

We should hold today that the *Caceres* rationale applies in the instant case. There is no question of the arresting officer's good faith; he testified that he arrested Hernandez because he thought there was an outstanding arrest warrant. There is also no question that a warrant would have been issued had the withdrawn affidavit been submitted to a judge or magistrate. None of appellant's constitutional rights were violated by the issuance of a capias rather than a warrant. The long-standing and oft stated purposes of the exclusionary rule will simply not be served by applying it to the facts of this case.

There is no reversible error; we should grant the State's motion for rehearing and affirm the judgment.

TOM G. DAVIS, DALLY and W. C. DAVIS, JJ., join in this opinion.