Marshall Labert SMITH, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 6–88–041–CR.

Court of Appeals of Texas,
Texarkana.

April 25, 1989.

Webb Biard, Biard, Payne & Grossnickle, Paris, for appellant.

Tom Wells, Dist. Atty. of Lamar County, Lamar County Courthouse, Paris, for appellee.

GRANT, Justice.

Marshall Labert Smith, Jr. appeals his conviction of murder. A jury set his punishment at ninety-nine years in the Texas Department of Corrections.

Smith contends that the trial court erred in excluding relevant testimony showing the violent character of the victim and in admitting evidence obtained as a result of the search of his car.

In March 1988, while visiting his father's home in Paris, Texas, Smith, a resident of Dallas, Texas, first met Michael Woods. When he returned to Paris in May, he again met with Woods on the night of May 11, 1988. According to Smith's testimony, Woods, a television repairman, asked Smith to take him to a job site. After Woods finished the job, they bought some liquor and rode around in Smith's car while drink-

ing the liquor. When Woods taunted Smith about being a homosexual, they got into an argument. Smith drove to his father's house and told Woods to get out. When Woods refused, they began to fight. Smith stated that at one point in the fight he saw something that appeared to be a knife flash in Woods' hand. Smith admitted that after the first or second blow to Woods, Woods was no longer able to hit back. Smith further admitted that at another point during the fight "something snapped" and he "lost control." Smith testified that after the fight, Woods died while he was taking him to the hospital and that he dumped Woods' body at the fair grounds. The body was discovered the following morning. The State's expert witness testified that Woods received at least thirty blows which caused his injuries and subsequent death.

To substantiate his claim of self defense, Smith offered evidence of the character of the victim. Proof of a pertinent character trait of the victim of a crime may be offered by the accused pursuant to Tex.R. Crim.Evid. 404(a)(2). Tex.R.Crim.Evid. 405(b) allows such a character trait to be shown by specific instances of the victim's conduct.

All of the character trait testimony was admitted except the testimony of Woods' former attorney, Barney Sawyer. Sawyer's testimony was excluded on objection by the State that it violated the attorney-client privilege which existed between Sawyer and Woods. Sawyer's testimony was tendered outside the presence of the jury for purpose of this appeal. Sawyer testified that he had been appointed to represent Woods on a terroristic threat charge and that Woods had admitted firing a shotgun in the direction of a person with whom he had just fought.

■ Smith complains that the district attorney should not have been allowed to invoke the attorney-client privilege that existed between the deceased victim and his attorney, Barney Sawyer. Rule 503(c) of the Texas Rules of Criminal Evidence provides that:

The privilege may be claimed by the client, his guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

Smith correctly argues that the prosecuting attorney is not one of the persons specifically enumerated in the rule who may claim the privilege. Thus, the trial court erred in excluding this evidence.

Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides that if the record reveals error, we are to reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

■ Betty Hall, a witness to the act constituting the terroristic threat, testified that Woods had fired a shotgun into a building where she had been present. Sawyer's testimony would have been cumulative, because it was offered to prove the same act which was proved by Hall's testimony. We therefore find that the exclusion of Sawyer's testimony was harmless error and that it made no contribution to Smith's conviction and punishment.

■ Smith next contends that the trial court erred in admitting the evidence obtained as a result of the search of his car. The officer had been given a description of the occupant, the automobile, and the number of the license plates. They had been informed that the vehicle was believed to have been used in transporting the body from the murder scene to where the body was found. The officers found physical evidence in the form of dried blood, which later tests showed to be the same as that of Woods' blood type. He first complains that he signed the consent form because the officers drew their guns, arrested him, and then asked him if they could search his car. The fact that a person is under arrest at the time he gives his consent to search

does not vitiate the consent, provided it is freely and voluntarily given. *Dempsey v. State*, 159 Tex.Crim. 602, 266 S.W.2d 875 (1954). John Coughlin, one of the arresting officers, testified that neither he nor the other officer forced Smith to sign the consent form and that Smith freely and voluntarily gave his consent at the time of the arrest. No evidence was offered to the contrary. Thus, the evidence is undisputed that the consent was freely and voluntarily given, and thus valid.

Smith also seeks to nullify the consent form on the basis that it applied to the search of a residence and not to a motor vehicle. The pertinent part of the form signed by Smith states:

> I ... hereby authorize R.R. Alexander and J.J. Coughlin, police officers of the Dallas Police Department, City of Dallas, Dallas County, Texas, to conduct a complete search of my vehicle located at license number 203 JCC. These officers are authorized by me to take from my residence any physical evidence which they believe to be evidence of a suspected criminal offense or which they believe will be relevant to the investigation of suspected criminal offense.

The officers testified that Smith gave them oral consent to search his car before signing the written consent form. The form was obviously designed for the search of a house, but the officers attempted to modify it to make it applicable to an automobile. When considered with the undisputed testimony that oral consent had been given to search the automobile, we find that the failure to change the word *residence* to *automobile* on the consent form did not invalidate the search.

Smith also points out that the consent form was incorrectly dated May 11, 1988. Both Smith and the officers testified that the form was signed when the search took place on May 12, 1988. The erroneous entry of the date of May 11, 1988, on the form was no more than a clerical error and does not invalidate the search and seizure.

The judgment of the trial court is affirmed.