Charles DUBOSE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00684–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 9, 1993.

Rehearing Denied Oct. 28, 1993.

Charles A. Brown, Jr., Houston, for appellant.

John B. Holmes, Alan Curry, Houston, for appellee.

Before WILSON, DUGGAN and MIRABAL, JJ.

## OPINION

WILSON, Justice.

After the trial court overruled a motion to suppress evidence, appellant, Charles Du-Bose, pled guilty to possession of less than 28 grams of methamphetamine, and true to two enhancement paragraphs, one for burglary of a habitation and one for unauthorized use of a motor vehicle. The trial court found appellant guilty, and assessed punishment at 30–years confinement, in accordance with a plea agreement. We reverse.

Appellant's sole point of error asserts that the trial court reversibly erred in denying his motion to suppress. Appellant specifically asserts: (1) the police officers lacked the probable cause required to detain, search, or arrest him; and (2) the State failed to prove, by clear and convincing evidence, that the consent to the search was given freely and voluntarily.

At the suppression hearing, the State introduced testimony from the two police officers involved in the detention, search, and arrest of appellant. Appellant testified on his own behalf, and subpoenaed T.J. Sumner, a co-defendant, who asserted his right against self-incrimination and refused to testify.

Officer Daniel Rosales testified that on January 9, 1990, he and his partner were assigned to undercover narcotics investigations. Rosales received information from an informant, whose information had been reliable and accurate in the past, indicating appellant was going to purchase methamphetamine with the intent to distribute it. Rosales testified that the informant said he did not know where appellant lived, but that appellant would return home after the purchase to package the drugs for resale. Rosales was acquainted with appellant, knew where appellant lived, and knew appellant by sight. Rosales said he had no knowledge of appellant ever selling methamphetamine out of his home, and the informant had specifically said appellant would not be selling the drugs out of his apartment.

Rosales testified that, after receiving the information, he and his partner, Officer Greg Flowers, set up surveillance in front of appellant's duplex. They were there for 30 minutes to an hour before appellant drove up in a car. Rosales recognized the occupants of the car as appellant and T.J. Sumner. The car was illegally parked, but no other illegal activity was observed. Rosales and Flowers approached the two men, who had gotten out of the car and headed towards the duplex. Appellant greeted them by saying, "How's it going, Rosey?"

Rosales said appellant knew he was a police officer, even though he was not in uniform. Rosales asked appellant if he was "holding," and appellant replied, "No, I'm not." Rosales asked appellant again, and appellant replied, "You can check me." Rosales conducted an outer body search, including appellant's pockets, but found no contraband. Rosales then asked appellant if they could go inside so Rosales could check underneath appellant's pants. Rosales testified he did this because he knew plastic baggies placed against the skin of a suspect could not be felt in a "pat down" search, and appellant had previously told him of this method of concealment. He said appellant replied, "There's no problem with that," and they went inside the duplex.

Once inside the duplex, the officers "secured the area" by having the two men, and a third man found inside the apartment, sit in the living room area while appellant pulled down his pants. No contraband was found. Rosales then asked appellant to remove his shoes, and, when appellant removed his right shoe, appellant tried to hide his foot from Rosales. At that point, a plastic baggie con-

taining white powder fell out of the shoe, and appellant tried to hide the baggie under the couch he was sitting on. Rosales said he reached down, grabbed the baggie, and asked appellant, "What's this?" When appellant replied that the substance was "meth," Rosales placed him under arrest and handcuffed him. A field test verified appellant's identification of the substance.

Rosales testified that, during the search, Sumner was standing in the middle of the room and Officer Flowers was keeping an eye on all three men. Rosales said he never threatened appellant, never promised appellant anything for consenting to the search, and never told appellant that, because Rosales was a police officer, appellant had to consent to the search. Rosales testified appellant voluntarily agreed to the search, never objected to the search, nor did his codefendant, Sumner.

On cross-examination, Rosales said it takes from one to two hours to obtain a warrant. Rosales had used information from this informant fewer than 10 times, but more than twice, and the information was always true and correct. He received the information shortly after 9:00 p.m. He and Flowers went directly to appellant's apartment, arriving before 9:30 p.m. The arrest took place at 10:00 p.m. Rosales said he received the information on his car phone. Rosales contacted his supervisor about his activity, but made no attempt to get a warrant because, in his opinion, he did not have the requisite probable cause to get warrants to search the apartment or appellant's person. There was, however, enough reasonable suspicion, in his opinion, to stop and question appellant.

Rosales testified that he did not draw his weapon when he stopped appellant, appellant could have walked away at any time, and appellant was not under arrest when the questioning began. Appellant's attorney asked:

[DEFENSE ATTORNEY]: Under your own impression of the situation, since he knew you were an officer and you are a police officer, once you came up to him, was it not a fact that he was under arrest and he couldn't leave the scene?

[WITNESS]: (No response).

[DEFENSE ATTORNEY]: He could not have just walked away?

[WITNESS]: Sure, he could have.

[DEFENSE ATTORNEY]: Are you saying that you wouldn't have stopped him?

[WITNESS]: I would have asked him to stop.

[DEFENSE ATTORNEY]: And what if he kept walking?

[WITNESS]: I don't know. It didn't happen. I don't know what could happen.

Rosales testified that Officer Flowers drew his gun, but not until after they entered the apartment. Rosales said appellant was known to carry weapons, but he found no weapons on appellant in the original search. The officers secured the apartment when they entered it, and then continued the search of appellant. Appellant's attorney asked:

[DEFENSE ATTORNEY]: Once those premises were secured and you were inside that apartment, did you have an opportunity to call in to get a search warrant?

[WITNESS]: I could have, sure.

[DEFENSE ATTORNEY]: You didn't.

[WITNESS]: No, sir; I don't think I had enough probable cause to get a search warrant.

[DEFENSE ATTORNEY]: There was no threat that Mr. DuBose or Mr. Sumner were getting ready to flee at that point; was there?

[WITNESS]: No, sir.

[DEFENSE ATTORNEY]: When you did your original patdown and you found nothing, you had no probable cause at that time, in your own mind, to make an arrest; did you?

[WITNESS]: I felt like I had probable cause to believe that he was holding but not enough probable cause for a search warrant.

[DEFENSE ATTORNEY]: You thought you had probable cause to do a further search, but you didn't think you had probable cause to call in for a search warrant?

[WITNESS]: I couldn't have searched him if he wouldn't have consented. I didn't feel there was enough probable cause to search him without it, and he consented.

. . . .

[DEFENSE ATTORNEY]: Had there been, for the sake of argument, no consent, would you not have had to call and get a search warrant—to search this person further? No consent?

[WITNESS]: Without consent, I would have left. I didn't have enough grounds for a search warrant, sir. I mean maybe I did, but I didn't think I could get a search warrant on it.

. . . .

When asked exactly what was said when appellant consented to the search, Rosales testified:

[WITNESS]: I just asked him again—I said, "Chuck, are you sure you're not holding?"

"Rosey, I'm not holding. You can check me if you want to."

I said, "You don't mind if I search you?" And he said, "No, sir."

When asked what was said once they entered the apartment, Rosales testified:

[WITNESS]: I asked him, "Chuck, do you mind if we all go inside so I can have you take off your pants so I can check you further?"

And he said, "No problem."

Officer Greg Flower's testimony was similar to Rosales' testimony. He said appellant consented to the search outside the apartment, to the officers' entry into appellant's apartment, and to the strip search inside the apartment. Flowers testified that when Rosales asked appellant if he was holding, appellant replied, "You can go ahead and check me if you'd like." He said he drew his gun when they entered the apartment for safety reasons, but he kept the gun down by his side the entire time. He never pointed the gun at appellant or his companions. He heard both appellant and Sumner say, "Yes, go ahead and search me." No objections were raised and appellant did not appear to be coerced into being searched.

On cross-examination, Flowers testified he saw no traffic violation or other illegal activity at the time he and Rosales approached appellant. He said they did not call in for a warrant because they had no phone in the vehicle. The attorney then asked:

[DEFENSE ATTORNEY]: From the time that you walked up to DuBose and Sumner, if they had wanted to walk away, could they have?

[WITNESS]: Yes, sir, sure could have.

[DEFENSE ATTORNEY]: What would you have done? Would you have stopped them?

[WITNESS]: (No response.)

[DEFENSE ATTORNEY]: The question is: Were they really under arrest at the time you walked up to them?

[WITNESS]: No, sir.

. . . .

[DEFENSE ATTORNEY]: Once you were inside and the apartment was secured, could they have left?

[WITNESS]: Sure.

[DEFENSE ATTORNEY]: So they still were not under arrest, even though you had your gun drawn?

[WITNESS]: Yes, I did.

[DEFENSE ATTORNEY]: Were they under arrest at that time?

[WITNESS]: No, sir.

[DEFENSE ATTORNEY]: They would have been able to walk out?

[WITNESS]: Sure.

He could not recall the exact words of the conversation regarding consent once they entered the apartment, but there were several conversations.

Appellant testified that he felt like he was under arrest from when he was first approached by the officers. He testified that Rosales, after conducting the original search, stated "Well, let's go inside and pull a strip search." Rosales led the way into the apartment, with appellant and Sumner in the middle, and Flowers in the back. Upon entering the apartment, Flowers drew his gun and closed the door. Appellant testified that he felt he could not walk away at that time.

Appellant said he specifically asked Rosales, "What would stop me from running away if I was holding drugs on me?" and Rosales replied, "We could have stopped you like that."

Appellant specifically asserts: (1) the police officers lacked the probable cause required to detain, search, or arrest him; and (2) the State failed to prove, by clear and convincing evidence, that the consent to the search was given freely and voluntarily.

■ A warrantless search is per se unreasonable. However, this rule has a few limited exceptions, including consent. *Paprskar v. State,* 484 S.W.2d 731, 737 (Tex. Crim.App.1972). While it is true that individuals may waive their protection against warrantless searches by consenting to a search, such consent must be freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). The government must prove this by clear and convincing evidence. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim. App.1986); *Paprskar,* 484 S.W.2d at 737.

■ The initial questioning of appellant was conducted pursuant to a valid investigatory stop. While it is true that the officers admitted that they did not have probable cause to detain appellant, an investigatory stop requires only reasonable suspicion to justify the stop. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App.1983). The officers who stopped appellant had a reasonable suspicion to stop appellant based on the information received from the informer. This stop was a valid investigatory stop, and appellant was not in custody.

■ During this investigatory stop, Officer Rosales asked appellant if he was "Holding," and appellant said "No ... you can check me." Officer Rosales then conducted an outer body search, but found no contraband. A search pursuant to valid consent is a valid search, despite the well-settled rule that a search without a warrant is per se unreasonable. In order for consent to a search to be valid, the subject must consent freely and voluntarily. However, when the subject of a search is not in custody and the State justifies the search based on consent, "the Fourth and Fourteenth Amendments require that it

[the State] demonstrate that the consent was in fact voluntarily given and not the result of duress or coercion, express or implied." *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973). *See also Paprskar,* 484 S.W.2d at 738.

■ The trial court concluded that the entire search was consensual. The record supports this conclusion for the initial outer body search. Appellant voluntarily agreed to allow the officers to conduct an outer body search by both his words and his actions. However, appellant's consent was not unlimited. A consensual search may not exceed the scope of that consent given. In analyzing the scope of appellant's consent, it is useful to divide the search into discrete segments.

■ After the initial outer body search, Officer Rosales then requested that the defendant move inside so that a search could be conducted under the defendant's pants. Appellant replied, "There is no problem with that." The officers conducted the search under appellant's pants inside the duplex. When the officers and the defendant moved indoors, Officer Flowers drew his gun within the house. Appellant consented to the search under his pants before a weapon was produced. Evidence in the record supports the conclusion that appellant consented to this segment of the search.

■ After the search under appellant's pants was conducted, Officer Rosales asked the defendant to remove his shoes. At this time, Officer Flowers had already produced his weapon and was securing the premises. Appellant had initially consented to a pat-down search outside the duplex. Then Officer Rosales asked specifically if he could check under appellant's pants. When appellant consented to this second search, he consented to a very specific, narrow search. The test for whether the scope of consent to search has been exceeded asks what a reasonable person would have expected the search to include. *Florida v. Jimeno,* 500 U.S. 248, ——–——, 111 S.Ct. 1801, 1803–1804, 114 L.Ed.2d 297 (1991). Therefore, the question in this case is what would a reason-

ably prudent officer have understood appellant's consent to mean. Given appellant's acquiescence to limited search requests, the facts of this case indicate that appellant consented only to a narrowly defined search. In *Florida v. Jimeno*, the Supreme Court specifically stated that "[a] suspect may of course delimit as he chooses the scope of the search to which he consents." 500 U.S. at ——, 111 S.Ct. at 1804. Appellant in this case did limit his consent. Therefore, this further search exceeded the scope of the consent that appellant had given for the earlier outer body searches and the search under his pants.

▪ The record does not reflect that additional consent was given when appellant was asked to remove his shoes. The voluntariness of any further consent by appellant is highly suspect due to the display of weapons by an officer, which may indicate coercion. *Lowery v. State*, 499 S.W.2d 160, 168 (Tex.Crim.App.1973); *Weed v. State*, 340 F.2d 827, 829 (10th Cir.1965).[1] Mere acquiescence to authority does not satisfy the requirement of voluntariness. *Bumper*, 391 U.S. at 548–49, 88 S.Ct. at 1791–92.

At the point in this investigatory stop where appellant was asked to remove his shoes, consent to the search was not freely and intelligently given. Because the officers exceeded the scope of the consent given by appellant and exerted coercive force with their drawn guns, the search ceased to be voluntary. Upon examination of the totality of the evidence, the State has failed to meet its burden of proof that the consent to this search was freely and voluntarily given. No evidence in the record supports that consent was freely given at the point of the search when appellant was moved inside and weapons were produced.

We sustain appellant's point of error.

We reverse the judgment and remand.

MIRABAL, J., dissents and files opinion.

MIRABAL, Justice, dissenting.

I dissent.

I agree with the majority's conclusion that appellant voluntarily consented to the search conducted outside, as well as to the search under his pants conducted inside the apartment. However, I disagree with the majority's conclusion that the scope of appellant's consent, under the "objective reasonableness" standard, did not include the removal of appellant's shoes.

Officer Flowers testified that appellant voluntarily consented to the searches both outside and inside the apartment. Officer Rosales testified:

I asked him, "Chuck, do you mind if we all go inside so I can have you take off your pants so I can check you further?"

And he said, "No problem."

The standard for measuring the scope of a suspect's consent under the fourth amendment is that of "objective" reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno*, 500 U.S. 248, —— ——, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). The question before us, then, is whether it is reasonable for an officer to consider a suspect's consent to the removal of his pants, to include consent to the removal of his tennis shoes in the process of the removal of his pants.

In the present case, I believe the trial court could have properly concluded that the officers reasonably understood that appellant agreed voluntarily to remove his pants, and if that meant taking his shoes off in order to get his pants off, that would be done. When they got into the apartment, appellant did not take his pants completely off; instead he just pulled them down. Officer Rosales then

---

1. In *Lowery*, consent to the search of a home was given by a person surrounded by five police officers all of whom carried pistols and shotguns. 499 S.W.2d at 167. In *Weed*, the defendant consented to a search of his automobile after he had been taken into custody, during a period of "dramatic excitement" during which the police officers had produced pistols and a riot gun.

340 F.2d at 829. While it is true that the appellant in this case did not face the same magnitude of weapons as the defendants in *Weed* and *Lowery* did, this does not mitigate the coercive factor of the weapon drawn by Officer Flowers. The number of weapons is not determinative, rather the key factor is whether the facts surrounding the consent indicate coercion.

asked appellant to take off his shoes, and appellant proceeded to take off his right shoe. Appellant did not object, or say anything to indicate his consent was limited to simply pulling down his pants.

Of course, in hindsight, we can assume appellant did *not intend* to authorize the search of his shoe. However, that is not the standard of review. Under the "objective reasonableness" test, the evidence supports the conclusion that it was reasonable for the officers to believe they had appellant's consent to the removal of his tennis shoes. The officers maintained that they believed appellant voluntarily agreed to the search that was conducted. The trial court is the sole judge of the credibility of witnesses, and we will not disturb the trial court's findings absent an abuse of discretion. *Freeman v. State,* 723 S.W.2d 727, 729 (Tex.Crim.App.1986); *Straughter v. State,* 801 S.W.2d 607, 609–10 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

I would overrule appellant's sole point of error and affirm the judgment.