Ronald Dewayne GOINES, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–94–00380–CR, 01–94–00383–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 23, 1994.

Charles Hinton, Houston, for appellant.

John B. Holmes, Jr., Dan McCrory, Vicki Turko, Houston, for appellee.

Before DUGGAN, HUTSON–DUNN and ANDELL, JJ.

### OPINION

ANDELL, Justice.

Appellant, Ronald Dewayne Goines, was indicted for two counts of burglary, enhanced by two prior felony convictions. After finding appellant guilty and the enhancement paragraphs to be true, a jury assessed punishment at 45–years confinement. In two points of error, appellant contends that the trial court erred in overruling his motion to suppress. We affirm.

At the suppression hearing, the State introduced testimony from the security guard who first discovered the burglary, the officer who dispatched the suspect's description over the police radio, and one of the officers who detained appellant and conducted the search of his automobile. Appellant testified on his own behalf.

Airee Grant testified that on April 20, 1993, she was working as a security guard at an office building located on the Katy Freeway. After noticing that two of the offices in

the building appeared to have been burglarized, she notified the police and told the arriving officer what she had observed. Although she did not see anyone leaving the offices in question, she did observe appellant getting into his yellow Cadillac, which was parked directly in front of the office building. Grant recognized appellant because he had previously worked as a security guard with her at the office complex, but had been fired several weeks earlier.

Officer Janice Hutchinson testified that she responded to the burglary call and spoke with Grant who informed her that two offices had been broken into and that she had seen appellant carrying a computer from the building and placing it in his vehicle. Grant then provided the officer with appellant's name, his physical description, a description of his car, and the general location of his residence. Officer Hutchinson then dispatched the information over the police radio.

Officer Kenneth Smith testified that he was on patrol near appellant's residence when he heard the broadcast. He went to appellant's address, but did not discover a car that matched the description he received. Shortly thereafter, he was advised by another unit that a car matching the description given by Grant had been seen at a convenience store located approximately one-half mile from appellant's address. Officer Smith drove to the location and found appellant talking on a pay phone.

Officer Smith and another officer approached appellant and asked to speak with him. When they did so, Smith's portable police radio broadcasted additional information concerning appellant and the burglary. Appellant apparently overheard the broadcast and began to immediately deny any involvement in the offense. Smith advised appellant that he had received information from another officer that a vehicle fitting his car's description and a male fitting his description had been seen leaving the scene of a burglary. Smith then asked appellant if he would sign a "Consent to Search" form so that the officers could perform a search of his vehicle.

Smith showed appellant the form and after appellant read the form himself, the officer read it aloud to him. The officer explained that if he signed the form, it would allow the officers to search his car. The officer further informed appellant that he did not have to give them permission to search his car, but he could get a search warrant to do so. Appellant agreed to the search and signed the consent form. Upon searching the trunk of appellant's car, the officers discovered an assortment of computers, portable radios, cassette players, and facsimile machines that were later identified by the office owners.

Appellant testified that he was talking on the telephone when the officers approached him at the convenience store and told him to hang up the phone. At that point, appellant maintains that the officers went directly to his automobile and turned the ignition on, opened the glove compartment, and popped open the trunk. When the officers discovered the stolen merchandise in his trunk, appellant said he asked them if they had a search warrant. According to appellant, the officers told him that if he did not sign a consent to search form, they would impound his car and go get a search warrant because they already knew the merchandise was in the car. Although he acknowledges that he read and signed the consent form without being forced to do so, appellant maintains that his consent was involuntarily given because the officers already knew the merchandise was in his car.

In his first point of error, appellant contends that although he consented to the search of his vehicle, the consent was involuntarily given and therefore the trial court erred by not granting his motion to suppress.

### STANDARD OF REVIEW

A trial court's ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993); *Santos v. State,* 822 S.W.2d 338, 339 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). To determine whether the trial court abused its discretion, the evidence is viewed in the light most favorable to the trial court's ruling. *Daniels v. State,*

718 S.W.2d 702, 704 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986), *overruled on other grounds, Juarez v. State,* 758 S.W.2d 772 (Tex.Crim.App.1988). At the hearing on a motion to suppress, the trial judge is the sole fact finder, and as such, may believe or disbelieve all of or any part of any witness' testimony. *Allridge,* 850 S.W.2d at 492; *Santos,* 822 S.W.2d at 339. Any finding that is supported by the record will not be disturbed on appeal. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Santos,* 822 S.W.2d at 339.

 The fourth amendment of the United States Constitution and article I, section 9 of the Texas Constitution both provide that all persons shall be free from unreasonable searches and seizures. Generally, a search conducted without a warrant based on probable cause is unreasonable. *See DuBose v. State,* 864 S.W.2d 656, 660 (Tex.App.—Houston [1st Dist.] 1993, no pet.). There are, however, a few limited exceptions to this rule, such as when an individual gives the officer consent to search without a warrant. *Id.*

 If the State is relying upon a search conducted pursuant to consent, the prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Crim.App.1976); *Layne v. State,* 752 S.W.2d 690, 693 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). This burden requires the prosecution to show that the consent given was positive and unequivocal, and not the result of duress or coercion. *Allridge,* 850 S.W.2d at 493. The prosecution's burden cannot, however, be discharged by showing no more than acquiescence to a claim of lawful authority. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App.1985). The question of whether a consent to search was "voluntary" is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973); *Meeks,* 692 S.W.2d at 510; *Delosreyes v. State,* 853 S.W.2d 684, 690 (Tex.App.—Houston [1st Dist.] 1993, no pet.).

## ANALYSIS

Since the officers in this case did not have a warrant to search appellant's car, the validity of the search depended on appellant's consent. It is undisputed that appellant did, in fact, give the officers written permission to search his vehicle. Appellant contends, however, that the consent was involuntarily obtained due to the following factors: (1) Officer Smith took appellant's keys from his car before appellant had signed the consent form; (2) Officer Smith informed appellant that a search warrant could be obtained; (3) appellant did not first offer consent, but rather the consent was given in response to a police request; (4) the first three lines of the consent form were difficult to read; and (5) the consent form contained inconsistent wording. We have analyzed each of these factors in turn below.

### 1) Removing the car keys

At trial, Officer Smith admitted that he had removed the keys from appellant's car before the consent to search form was actually signed by appellant. Appellant argues that such conduct constituted a search of his vehicle and a seizure of his keys. He contends that in the face of such action by a police officer, any reasonable person would see the futility of resisting the officer's request to search. Therefore, he claims his consent was nothing more than acquiescence to a claim of lawful authority.

 At the time the officers approached appellant, however, they were justified in temporarily detaining him. Circumstances short of probable cause for arrest may justify a temporary detention for the purpose of investigation. *Glass v. State,* 681 S.W.2d 599, 601 (Tex.Crim.App.1984). In order to justify an investigative stop, an officer is required to possess specific, articulable facts that, in light of his experience and general knowledge together with rational inferences from those facts, would reasonably indicate that the particular person has either committed or is about to commit a crime. *Id.*

In *Louis v. State,* 825 S.W.2d 752, 754–56 (Tex.App.—Houston [14th Dist.] 1992, pet.

ref'd), a police officer heard a radio dispatch that gave a description of the physical characteristics of two robbery suspects and of the car they were driving. The court held that the officer was justified in temporarily detaining the defendants who generally matched that description. *Id.* at 754–55.

■ In this case, the officer approached appellant in the convenience store parking lot because appellant and his vehicle matched the description he had received concerning a recent burglary. Appellant then confirmed that his name was Ronald Goines and the officer knew that this was the name of the suspected burglar. Upon hearing information regarding the burglary over the officers' police radios, appellant began to immediately deny any involvement.

At the time they approached appellant, the officers had probable cause to obtain a warrant to search appellant's vehicle. By removing the car keys from the ignition, the officers were merely preventing appellant from driving off in his automobile. The officers had a right to preserve the evidence that they had reason to believe was contained in appellant's vehicle until either consent to search was obtained from appellant or a warrant was obtained. Removal of the car keys did not strip appellant of his ability and legal right to refuse to consent to the search; it simply served to facilitate the officers' lawful temporary detention of appellant.

■ Moreover, it is undisputed that Officer Smith informed appellant that he had a right to refuse consent. The showing that a suspect has been warned that he does not have to consent to the search and has a right to refuse is of evidentiary value in determining whether a valid consent was given. *Allridge,* 850 S.W.2d at 493 (citing *Meeks,* 692 S.W.2d at 510 (right to refuse is one circumstance to look at in determining voluntariness of consent)). The written consent form that appellant acknowledged reading and signing also clearly apprised appellant of his right to refuse. The trial court also could have considered that, as a former security guard, appellant probably understood that he had a right to refuse consent to search his car. As in *Louis,* the circumstances justified the officers' temporary detention of appel-

lant. Removal of the car keys merely facilitated this detention and did not render appellant's consent involuntary.

### 2) Informing appellant that a search warrant could be obtained

■ During the pretrial hearing, Officer Smith testified that he told appellant that he could obtain a search warrant if necessary. The fact that an officer asserts that he can obtain a warrant, however, does not vitiate an otherwise voluntary consent. *Grant v. State,* 709 S.W.2d 355, 357–58 (Tex.App.—Houston [14th Dist.] 1986, no pet.); *see also Delosreyes,* 853 S.W.2d at 690. As stated above, the officers had probable cause to obtain a search warrant at the time that they approached appellant. If appellant did not give consent, then the officers had the right to preserve the evidence until such time as they actually obtained a warrant. Under the circumstances, the fact that the officers informed appellant that they had a right to get a search warrant did not render appellant's subsequent consent involuntary.

### 3) Consent was not first offered by appellant, but was given in response to police request

■ Appellant also contends that another factor that affected the voluntariness of his consent is the fact that he only gave his consent in response to a request by a police officer, as opposed to offering the consent spontaneously. Although it is one factor to look at in determining voluntariness, an officer's request does not render the consent involuntary. *See Fontenot v. State,* 792 S.W.2d 250, 254 (Tex.App.—Dallas 1990, no pet.) (consent obtained after officer asked permission to search was voluntary).

### 4) Illegibility of the consent form

■ Appellant additionally maintains that the validity of his consent is questionable because the first three lines of the consent form were difficult to read and it contained inconsistent wording. Therefore, he argues that he did not knowingly give consent to the search.

Although the first two lines of the consent form may have been difficult to read, it did not diminish appellant's ability to knowingly and voluntarily consent to the search. In addition to admitting that he read the form himself, appellant does not dispute that Officer Smith read the substance of the form to him as well and informed him that he had a right to refuse consent. Therefore, the trial court was justified in finding that appellant had full knowledge of the form's content prior to signing it.

*5) Inconsistency in the consent form*

■ Appellant also complains that when he signed the form, he was uncertain about the location the officers wanted to search due to inconsistent wording in the form. The form that appellant signed stated:

I, Ronald Goines, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize K.R. Smith and G.L. Shelton, Policemen of the Houston Police Department, to conduct a complete search of my *vehicle* located at 8800 Denton. These officers are authorized by me to take from my *residence* any letters, papers, materials, or other property which they may desire. This written permission is being given by me to the above named officers voluntarily and without threats or promises of any kind and is given with my full and free consent.

(Emphasis added).

The pre-printed consent form uses the word "residence" in both of the emphasized portions above. Before appellant signed the form, Officer Smith crossed out the first occurrence of the word and replaced it with the word "vehicle." He neglected, however, to correct the second occurrence of the word. Therefore, appellant contends that he was left to guess as to whether the officers were seeking permission to search his residence or his vehicle.

The first sentence, in which appellant consents to the search, properly read that appellant was giving consent to search his vehicle. The second sentence, which was not amended, does not involve consent to search, but rather relates to authority to remove any property that the officers discovered as a result of the search. When combined with the fact that appellant's vehicle, and not his residence, was located at 8800 Denton as indicated in the consent form, it is highly unlikely that appellant was misled by Officer Smith's oversight.

It should also be noted that Officer Smith testified at trial that he informed appellant that if he signed the form, it would give the officers consent *to search his vehicle.* Appellant himself testified that he signed the form because the officers already knew the merchandise was *in his car.* Therefore, the fact that Officer Smith failed to scratch out the word "residence" and replace it with the word "vehicle" in the second sentence does not render appellant's consent involuntary. *See Smith v. State,* 770 S.W.2d 70, 72 (Tex. App.—Texarkana 1989, no pet.) (failure to change word *residence* to *automobile* on the consent form did not invalidate the search).

## CONCLUSION

The record indicates that appellant was informed that he could refuse to consent; that he signed the form freely and voluntarily; and that he was not subjected to any show of force or coercion from the officers. Although appellant contends that he was merely submitting to a show of authority and did not know the location that the officers wanted to search, the trial judge, acting as the fact finder, was free to believe Officer Smith's testimony and disbelieve all or part of that given by appellant. Based on the totality of the circumstances, the trial court did not abuse its discretion by finding that appellant knowingly and voluntarily consented to the search of his car.

We overrule appellant's first point of error.

■ In his second point of error, appellant argues that the trial court erred in overruling his motion to suppress because the search exceeded the scope of his consent.

Once again, appellant complains of the inconsistency in the consent form. He argues that the specific terms of the written consent

form only authorized the officers to seize evidence from appellant's residence. Therefore, he contends, the officers exceeded the scope of his consent when they retrieved items located in the trunk of his vehicle.

Officer Smith's oversight in amending the consent form did not prevent the officers from removing the merchandise from appellant's trunk. Once the officers discovered the property during the consensual search of appellant's car, they were entitled to remove it, with or without appellant's consent, pursuant to TEX.CODE CRIM.PROC.ANN. art. 18.16 (Vernon Supp.1994). Therefore, the evidence, viewed in the light most favorable to the trial court's ruling, was sufficient for the trial judge to find that the officers did not exceed the scope of the consent given by appellant.

We overrule appellant's second point of error.

We affirm the judgment of the trial court.