Affirmed and Opinion filed July 3, 2003









Affirmed
and Opinion filed July 3, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00501-CR

____________

 

HARRY G. BELLAIRE, Appellant

 

V.

 

THE STATE OF TEXAS ,
Appellee

 



 

On
Appeal from the 180th District Court

Harris County, Texas

Trial
Court Cause No. 870,240

 



 

O
P I N I O N

Appellant,
Harry G. Bellaire, was charged by indictment with aggravated sexual assault; he
entered a plea of not guilty.  A jury
convicted appellant and assessed his punishment at six years of community
supervision and a $6,000 probated fine. 
As a condition of his probation, the trial court sentenced appellant to
six months in Harris County Jail.  On
appeal, appellant contends the trial court (1) improperly denied his motion to
suppress; (2) failed to admit relevant evidence; and (3) prohibited appellant
from cross-examining the complainant on certain facts.  Appellant also contends the evidence was
factually insufficient to support his conviction.  We affirm. 









Background

On
December 7, 2000, complainant, Sonya[1]
and her cousin Theresa attended a corporate Christmas party at the Petroleum
Club.  There, Sonya drank between six and
eight alcoholic beverages in a few hours. 
Sonya became ill and excused herself to the restroom where Theresa found
her vomiting in a stall.  Theresa brought
Sonya a glass of ice water and a wet towel for her neck.  Theresa tried to lift Sonya to leave the
party, but because Sonya had little, if any, control over her body, Theresa
knew she could not get Sonya home.  At
Sonya=s
urging, Theresa returned to the party.  

Theresa
checked on Sonya periodically.  So people
could not see Sonya=s condition, Theresa helped her back into the bathroom.  As Theresa tried to move her, Sonya became
ill and vomited again.  Theresa then took
Sonya to a couch in the bathroom and brought her another glass of ice water and
a towel for her face.  Theresa also
propped the door open with a chair because the vanity area of the bathroom was
extremely hot.  A few minutes later,
Theresa checked on Sonya again and found her asleep in the hallway on a bed of
armless chairs.  Theresa asked her if she
wanted to return to the restroom but received no response.  Theresa gripped Sonya by both arms and
returned her to the bathroom where she got sick again.  Theresa then helped Sonya to the couch and
returned to the party to wait for people to leave, so she could later help
Sonya out of the club without anyone seeing her condition.








Approximately
twenty to thirty minutes later, Theresa checked on Sonya again and found the
bathroom door closed and Sonya=s clothing disheveled and the bathroom dark.  Sonya=s dress was hiked up above her thigh, one of her breasts was
outside her dress, her underwear and pantyhose were removed from one leg, and
her shoe was laying on the floor next to her. 
Theresa woke Sonya and asked her what happened.  Sonya could not remember anything, but felt
moist and tender in her vaginal area as if she had just had sexual
inter-course.  Theresa notified the club=s
management who called the police to investigate.  Paramedics arrived minutes later and
transported Sonya to a local hospital for a rape examination.  Semen was detected on Sonya=s
clothing which was later tested for DNA. 
It matched that of appellant, who was arrested and charged with
aggravated sexual assault.  

Motion
to Suppress

In
his first issue, appellant contends the trial court erred in denying his motion
to suppress DNA evidence because it was the product of a warrantless search and
seizure.  He argues his employer coerced
him to attend a meeting and submit to giving a sample of his saliva to police
officers.  The State contends appellant
consented to giving the sample.  

We
review a trial court=s ruling on a motion to suppress evidence under an abuse of
discretion standard.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Under this standard, we view Athe evidence in the light most favorable to the trial court=s
ruling,@
affording almost total deference to findings of historical fact supported by
the record.  Id.  However, when mixed questions of law and fact
exist which do not turn upon an evaluation of credibility and demeanor, we
review the trial court=s decision under a de novo standard.  Id. 


Consent
is a well-established exception to the constitutional requirements for both a
search and probable cause.  Carmouche
v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).  The consent must be voluntary, which is a
question of fact determined from a totality of the circumstances surrounding
the alleged consent.  Id.  To be valid, the consent must Anot
be coerced, by explicit or implicit means, by implied threat or covert force.@  Id. 
The federal constitution requires the State to prove the voluntariness
of consent by a preponderance of the evidence while the Texas Constitution
requires the State to show by clear and convincing evidence that a defendant
voluntarily consented.  Id.  If the record shows a finding by clear and
convincing evidence that a defendant voluntarily consented, we will not disturb
that finding.  Id.








The
facts reflect that the police contacted the Petroleum Club to conduct voluntary
DNA testing of the male employees who worked on December 7, 2000, the day of
the sexual assault.  Werner Sanz, manager
of the Petroleum Club, produced a list of those employees and sent them a
memorandum announcing a mandatory meeting. 
At the meeting, Lawrence Finder, attorney for the Petroleum Club,
explained that police officers would arrive later in the day to speak to the
listed employees and ask them to submit to a voluntary saliva test.  Finder told the employees that (1) the club
encouraged its employees to cooperate with police, (2) the club would accompany
anyone during police questioning, (3) if an officer requests a saliva sample,
the club would be present, (4) an employee could hire an attorney and refuse to
speak to the officers and refuse the saliva test, (5) police had a list of
employees working on the night at issue and would note any employee who refused
to cooperate, and (6) if an employee refused to speak to police or give a
saliva sample, they could seek a subpoena or court order to obtain the sample. 

Appellant
first complains he involuntarily consented to the saliva sample because the
memorandum failed to address the purpose of the meeting.  While some employees may not have known the
purpose of the initial meeting, appellant did. 
As assistant manager of the Petroleum Club, appellant discussed the
sexual assault and subsequent police inquiry on a regular basis with Sanz from
the time of the attack, on December 7, 2000, until the day of the meeting,
January 31, 2001.  Every Friday and
Saturday night over that period, appellant and Sanz had dinner and discussed
how police were handling the case. 
Appellant knew police wanted saliva samples from the male employees
working on the day of the assault, and he never told Sanz he objected to the
sample, and instead suggested he would cooperate.  Sanz informed appellant about the memorandum
days before it was posted, and appellant did not object to the sample at that
time either.  








Appellant
also contends he was forced to give a saliva sample because Sanz was appellant=s
immediate supervisor.  Although the club
encouraged employees to give a saliva sample, the club did tell employees the
sample was completely voluntary.  The
club never threatened to fire, discipline, or punish appellant for failing to
give a saliva sample and nothing in the record suggests the club took that
approach with any of the listed employees. 
When Houston Police Officer Ralph Yarborourgh arrived at the club to
take the saliva samples, he reinformed the employees that the sample was
completely voluntary.  See Goines
v. State, 888 S.W.2d 574, 578 (Tex. App.CHouston [14th Dist.]
1994, pet. ref=d) (right to refuse search is one factor to look at when
determining if consent was voluntarily given). 
The officers did not touch or threaten appellant nor did they display
any weapons to gain appellant=s consent to the sample. 
Although the Petroleum Club did state the officers could get a subpoena
for the employees that failed to cooperate, that by itself does not invalidate
appellant=s consent.  See id.  (the fact an officer asserts he can obtain a
search warrant does not invalidate an otherwise voluntary consent).  

Some
employees actually left the room and refused to give a saliva sample.  Appellant, on the other hand, formed a line
with the other employees and subjected himself to the sample.  Appellant never tried to exit the room or
protest the saliva sample.  Thus, no
evidence suggested appellant=s consent was involuntary; rather, the evidence suggests it was
freely and voluntarily given.  Based on
the totality of the circumstances, and viewing the evidence in the light most
favorable to the trial court=s ruling, we conclude that the trial court did not abuse its
discretion when it found appellant=s consent to give the saliva sample was voluntary and not the
result of any coercion from the Petroleum Club or police.  Accordingly, appellant=s
first issue is overruled.  

Factual
Insufficiency 








In
his second issue, appellant contends the evidence was factually insufficient to
support the verdict because the State failed to prove appellant penetrated
complainant with his penis.  When
conducting a factual sufficiency review, the evidence is viewed in the light
most favorable to the verdict, and the verdict is set aside only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  Johnson v. State, 23 S.W.3d
1, 6B7
(Tex. Crim. App. 2000).  The evidence is
considered equally, including the testimony of defense witnesses and the
existence of alternative hypotheses.  Orona
v. State, 836 S.W.2d 319, 321 (Tex. App.CAustin 1992, no
pet.).  We consider the factfinder=s
weighing of the evidence and can disagree with the factfinder=s
determination.  Clewis v. State,
922 S.W.2d 126, 133 (Tex. Crim. App. 1996).  However, we are not free to reweigh the
evidence and set aside a verdict merely because a different result is more
reasonable.  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997).  We must
defer to jury findings and find the evidence is factually insufficient Aonly
where necessary to prevent manifest injustice.@  Id.

Appellant
argues the evidence is factually insufficient because the complainant denied
having pain a few hours after the attack and she did not know whether she was
sexually assaulted.  Although the
complainant denied having pain during her rape examination, she did feel as if
she had just had sexual intercourse.  She
felt moist in her vaginal area, on her legs, and on her panties and the lips of
her vagina were sore.  Moreover, Isaac Grate,
Jr., a physician in the emergency department of Christus St. Joseph Hospital,
testified that not all sexual assaults result in pain or trauma to the
complainant, depending on the compatibility of the individuals involved and the
circumstances.  Here, the complainant was
unconscious during the sexual assault and her rape examination was not
performed until three hours later, which could make any signs of penetration
difficult to detect.  Although appellant=s
DNA was not detected in the complainant=s vagina, p30 antigen was. 
The p30 antigen is only produced by males, and present in, among other
things, pre-ejaculate and remains detectable in a woman=s
vagina for approximately two days.  The
complainant testified she had sexual intercourse six days before the sexual
assault, and thus, the jury could infer from the time frame that the p30
antigen came from appellant.  When a
nurse examined complainant, she was unsure if she had been sexually assaulted
which she clarified when she explained something physical had happened, but she
could not remember it actually happening. 








Appellant
also argues a potential monetary settlement between the complainant and the
Petroleum Club inspired the complainant to bring forth new details of the
sexual assault.  The complainant also
allegedly filed a lawsuit against the Petroleum Club and appellant.  This information was brought before the jury.  The complainant testified that she had talked
to attorneys regarding a civil suit against the Petroleum Club and
appellant.  She also stated her attorney
had made a settlement demand to the Petroleum Club.  Thus, the jury, knowing of  the complainant=s potential lawsuit against the Petroleum Club and appellant,
could draw their own conclusion as to its effect, if any, on her credibility in
this case.  

The
jury disregarded appellant=s defense as was its right. 
Moore v. State, 804 S.W.2d 165, 166 (Tex. App.CHouston [14th Dist.] 1991, no pet.) (holding jury is entitled to accept the State=s
version of the facts and reject appellant=s version or reject any of the witnesses=
testimony).  The jury is the sole judge
of the credibility of the evidence and may accept or reject all or any part of
the witnesses= testimony.  We find the
verdict was not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Appellant=s
second issue is overruled.  

Photographs

In
his third issue, appellant contends the trial court erred in excluding
photographs of his penis.  Appellant
argues that had the jury seen the enormous size of his penis, they would have
questioned whether appellant penetrated the complainant because she suffered no
trauma or pain.  

The
admissibility of a photograph is within the sound discretion of the trial
court.  Williams v. State, 958 S.W.2d
186, 195 (Tex. Crim. App. 1997).  Absent
a clear abuse of discretion, the reviewing court will not disturb the trial
court=s
decision to exclude evidence.  Montgomery
v. State, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990).  All relevant evidence is admissible.  Tex.
R. Evid. 402.  Relevant means Ahaving
any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  Tex. R. Evid. 401.








Assuming,
arguendo, appellant=s description of his penis is accurate, the photographs are
irrelevant.  Dr. Grate testified that the
size of a penis could determine the amount, if any, of tearing, abrasions, and
redness that a sexual partner would experience after intercourse.  However, the size of a penis, alone, would
not determine the effect the male would have on a female=s
genitalia.  Instead, to determine the
compatibility of the individuals, the size of the penis must be compared with
the female genitalia and under what circumstances the sexual intercourse took
place.  

Here,
appellant did not offer the photographs to compare his penis with the
complainant=s genitalia or to establish the circumstances of the sexual
assault.  He merely wanted to admit the
photographs to support the supposition that had he penetrated the complainant,
she would have received trauma and abrasions. 
Additionally, during the sexual assault, the complainant was unconscious
and she was not examined for any tearing, abrasions, or redness until three
hours after the attack, which is enough time under the circumstances to
minimize evidence of penetration. Because the photographs alone could not
establish the relative compatibility of both parties=
genitalia, the photographs  were
irrelevant as to whether appellant penetrated the complainant and the trial
court properly excluded them.  See Tex. R. Evid. 401.  Accordingly, appellant=s
third issue is overruled.  

Potential
Litigation

In
appellant=s fourth issue, he contends the trial court erred in excluding
evidence of the details of a settlement demand from the complainant on the
Petroleum Club.  Appellant contends the
specific amount of the demand would establish complainant=s
bias for testifying against him.  








The
Sixth Amendment to the Constitution guarantees the right of an accused in a
criminal prosecution to be confronted with the witnesses against him.  U.S. Const.
amend. VI; Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39
L. Ed. 2d 347 (1974).  Similarly, the
Texas Constitution provides that, in all prosecutions, the accused shall be
confronted with the witnesses against him. 
Tex. Const. art. I, '
10.

Implicit
in the right of confrontation is the right of cross-examination.  Davis, 415 U.S. at 315, 94 S. Ct. at
1110.  The accused is accorded great
latitude in showing witness bias or motive to falsify testimony.  Carroll v. State, 916 S.W.2d
494, 497 (Tex. Crim. App. 1996).  The
extent of the cross-examination, however, is limited.  Hoyos v. State, 951 S.W.2d 503, 510 (Tex. App.CHouston [14th Dist.]
1997), aff=d, 982 S.W.2d
419 (Tex. Crim. App. 1998).  The trial
court=s
decision to limit cross-examination is not subject to reversal absent an abuse
of discretion.  Love v. State, 861
S.W.2d 899, 903 (Tex. Crim. App. 1993).  Whether the trial court abused its discretion
depends on the facts of the case.  Id.  

The
trial court held a hearing outside the jury=s presence to discuss what information the jury should hear
regarding any potential litigation between the complainant and the Petroleum
Club.  The complainant testified she had
hired an attorney and had made a settlement demand on the Petroleum Club for
one million dollars, the alleged insurance policy limit for circumstances such
as that at issue.  After the hearing, in
the presence of the jury, the complainant denied that a suit was filed against
the Petroleum Club but admitted her attorney had made a settlement demand on
the club for an unspecified amount for any of her personal injuries from the
sexual assault at issue.  

Although
the trial court allowed appellant to cross-examine the complainant about the
settlement demand on the Petroleum Club, it was limited.  Appellant argues that while the jury did know
the complainant may have had at least some bias against appellant, they could
not have known the extent of any alleged bias without knowing the insurance
policy limit.  We will examine the court=s
limitation of appellant=s cross-examination limit concerning further details of the
potential lawsuit under a harmless error analysis.  See Mallory v. State, 752 S.W.2d
566, 569 (Tex. Crim. App. 1988). 








When
doing a harmless error analysis, the reviewing court examines the entire record
and applies a three-prong test.  Young
v. State, 891 S.W.2d 945, 948 (Tex. Crim. App. 1994).  In the first prong, the court must assume the
Adamaging
potential of the cross-examination [was] fully realized.@  Shelby v. State, 819 S.W.2d
544, 547 (Tex. Crim. App. 1991).  With
that in mind, the court must consider the following five factors: (1) the
importance of the witness=s testimony; (2) whether the testimony was cumulative; (3) the
presence or absence of evidence corroborating or contradicting the testimony of
the witness on material points; (4) the extent of cross-examination otherwise
permitted; and (5) the overall strength of the prosecution=s
case.  Id.  Finally, the court must determine if the
error was harmless beyond a reasonable doubt. 
Id.  

For
the purposes of this case, we will assume appellant needed to question the
complainant about the specific dollar amount of her settlement demand to show
her bias or motive in testifying against him. 
To convict appellant of aggravated sexual assault, the State had to show
he penetrated the complainant.  While the
complainant testified she felt moist  and
sore in her vagina, that evidence was cumulative.  The complainant=s cousin, Theresa, testified that when she woke the complainant
up almost immediately after the sexual assault, the complainant kept saying
something was in her vagina. 
Additionally, test results revealed p30 antigen in the complainant=s
vagina which can only come from a male=s genitalia and is only detectable in a woman=s
vagina for two days.  During the
complainant=s rape examination only hours after the sexual assault, she
told the nurse she had not had sexual intercourse in the last six days.  Thus, the jury was entitled to believe her
testimony and could only infer the p30 came from appellant.  Additionally, appellant=s
semen was found on the complainant=s dress, pantyhose, and underwear.  








Although
the jury did not know the exact amount of the settlement demand, they did know
it existed and could infer for themselves any bias or motive the complainant
may have had against appellant and could balance that factor against the other
evidence presented.  It is clear the
State had a strong objective case against appellant and the jury is quite
capable of judging the credibility of the complainant=s
testimony.  Consequently, we conclude
beyond a reasonable doubt that the error in not admitting evidence of the exact
amount which may result from the potential lawsuit does not mandate a reversal.  Appellant=s fourth issue is overruled.

The
judgment of the trial court is affirmed. 

_____________________________

/s/        Joe
L. Draughn

Justice

 

 

 

 

Judgment rendered and Opinion filed July
3, 2003.

Panel consists of Justices Hudson,
Edelman, and Draughn.[2]

Publish C Tex. R. App. P.
47.2(b).











[1]  To avoid
revealing the complainant=s identity, we will refer to the complainant as ASonya,@and to her cousin as ATheresa.@





[2]  Senior Justice
Joe L. Draughn participating by assignment.